66 P.3d 59

**STATE of Arizona, Appellee,**

v.

**Scott G. SUCHAREW, Appellant.**

**No. 1 CA–CR 02–0190 RT.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 27, 2003.

Redesignated as Opinion and Publication Ordered April 11, 2003.

Review Denied Sept. 9, 2003.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and John L. Saccoman, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Christopher V. Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WINTHROP, Judge.

¶1 Scott G. Sucharew ("defendant") appeals his convictions for second-degree murder and leaving the scene of a fatal injury accident. Defendant contends that the trial court erred in (1) permitting the State to use a "PowerPoint"[1] presentation during opening statements; (2) allowing the State to introduce improper hearsay testimony; (3) restricting cross-examination of a witness; and (4) refusing two requested jury instructions. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 The charges against defendant arise from an automobile accident that occurred around midnight on the evening of July 3, 2001, on the Warner–Elliot Loop in the Ahwatukee Foothills area of Phoenix. Defendant and Westin Doyle were in separate vehicles speeding southbound on the Loop when defendant collided with a vehicle driven by Steven Welch south of the intersection of Equestrian Trail. The posted speed limit on the Loop is 40 miles-per-hour. Defendant was estimated to have been driving 70 to 80 miles-per-hour just prior to the collision. Welch sustained massive injuries in the accident and died at the scene.

¶3 Doyle's vehicle careened into a residential wall and came to a stop approximately fifty yards past the collision. Defendant walked over to where Doyle and his passenger were standing outside Doyle's car, said a few words, and then disappeared. The police later found defendant lying in the front lawn of a residence a short distance away from the accident scene. Defendant admitted to being involved in the accident and to drinking alcohol that evening. Analysis of a blood sample obtained from defendant revealed a blood alcohol concentration level of .141.

¶4 Defendant was indicted on charges of second-degree murder, a Class One felony, and leaving the scene of a fatal injury accident, a Class Three felony. Upon trial to a jury, defendant was found guilty as charged. The trial court sentenced defendant to a mitigated eleven year prison term on the murder conviction with credit for 124 days of presentence incarceration. The trial court suspended sentencing on the conviction for leaving the scene and placed defendant on supervised probation for four years, to commence upon his release from prison. Defendant filed a timely notice of appeal.

## ANALYSIS

**A. The trial court did not abuse its discretion in permitting the State to use a "PowerPoint" presentation during opening statements.**

¶5 Prior to trial, the prosecutor informed the court and defense counsel that he intended to use a "PowerPoint" presentation during his opening statement. The presentation consisted of a series of thirty slides including: 1) a title page; 2) photographs of the vehicles and accident scene with superimposed descriptions and headings; 3) a map; 4) a listing of defendant's blood alcohol content and physical symptoms; and 5) a list of the elements of the two charged offenses. Defendant objected on the grounds that he had not received advance notice of the presentation, that Rule 19 of the Rules of Criminal Procedure is silent on the use of such material, and that the presentation referenced evidence that might not be introduced at trial. After reviewing the proposed presentation, the trial court overruled the objection noting that the presentation was not prejudicial or inflammatory and that it did not include anything that was not likely to be admitted at trial.

1. "PowerPoint" is a registered trademark of the Microsoft Corporation for its graphics presentation software program.

¶ 6 "The trial court has full discretion in the conduct of the trial, and that discretion will not be overturned on appeal absent a clear showing of an abuse of discretion." *State v. Just,* 138 Ariz. 534, 550, 675 P.2d 1353, 1369 (App.1983). The function of an opening statement is "to inform the jury of what the party expects to prove and prepare the jury for the evidence that is to be presented." *State v. King,* 180 Ariz. 268, 278, 883 P.2d 1024, 1034 (1994).

¶ 7 Defendant argues that the trial court abused its discretion in permitting the prosecutor to use the "PowerPoint" presentation in his opening statement because the presentation involved a "computer generated exhibit." Although a computer was used in the presentation, the actual presentation did not include any computer simulation or other similar evidence; rather, it was essentially a slide show of photographic exhibits. The photographs included in the presentation were the same ones disclosed to defendant during pretrial discovery and later admitted into evidence at trial. Moreover, even though the photographs included superimposed descriptive words and labels, the words and labels simply tracked the subject matter of the prosecutor's opening statement to the jury, and defendant made no objection to any of the content or substance of the actual opening statement. We conclude, therefore, that there was no abuse of discretion by the trial court in permitting the State's use of the "PowerPoint" presentation. *See People v. Green,* 47 Cal.2d 209, 302 P.2d 307, 312 (1956) (holding trial court had discretion to permit use of motion picture and photographs later admitted into evidence during opening statement), disapproved on other grounds in *People v. Morse,* 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33 (1964).

**B.   The trial court did not err in precluding defendant from cross-examining a witness in regards to privileged communications.**

¶ 8 The State granted Westin Doyle immunity to obtain his testimony against de-

---

2. The attorney-client privilege is codified in Arizona in Arizona Revised Statutes ("A.R.S.")

---

fendant. During his cross-examination of Doyle, defendant sought to question Doyle about the conversations Doyle had with his attorney prior to being interviewed by defendant's investigator. The prosecutor raised an objection based on the attorney-client privilege. Defendant argued that the privilege was waived because Doyle's parents were present during the conversations. The trial court ruled that, because Doyle was a juvenile, the presence of his parents did not constitute a waiver of the privilege and precluded defendant from questioning Doyle regarding his conversations with his attorney.

¶ 9 Defendant contends that the trial court erred in sustaining the State's objection and restricting his cross-examination of Doyle. A trial court's ruling, restricting cross-examination, will not be disturbed on appeal absent an abuse of discretion. *State v. Adams,* 155 Ariz. 117, 122, 745 P.2d 175, 180 (App.1987). The issue of whether a privilege exists, however, is a question of law and therefore reviewed de novo. *State v. Malvern,* 192 Ariz. 154, 155, ¶ 2, 962 P.2d 228, 229 (App.1998); *Ulibarri v. Superior Court,* 184 Ariz. 382, 384, 909 P.2d 449, 451 (App. 1995).

¶ 10 The attorney-client privilege is the oldest of privileges for confidential communications and is "rigorously guarded 'to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' "[2] *State v. Towery,* 186 Ariz. 168, 177, n. 6, 920 P.2d 290, 299, n. 6 (1996) (citation omitted). The privilege belongs to the client and encompasses communication between the attorney and client made in the course of the attorney's professional employment. *State v. Holsinger,* 124 Ariz. 18, 22, 601 P.2d 1054, 1058 (1979). "Neither the client nor the attorney can be compelled to disclose these communications against the client's wishes." *Id.*

---

§ 13–4062 (2001).

¶ 11 Because the attorney-client privilege exists to protect confidential communications between the attorney and client, a client waives the privilege by disclosing the confidential communications to a third party. *Ulibarri*, 184 Ariz. at 385, 909 P.2d at 452. Accordingly, "[t]he presence of a third person will usually defeat the privilege on the ground that confidentiality could not be intended with respect to communications that the speaker knowingly allowed to be overheard by others foreign to the confidential relationship." Morris K. Udall, et al., *Law of Evidence* § 71, at 128 (3d ed.1991). This general rule does not apply, however, where the third party's presence does not indicate a lack of intent to keep the communication confidential. *United States v. Bigos*, 459 F.2d 639 (1st Cir.1972). Given the nature of the attorney-client privilege, the relevant inquiry focuses on " 'whether the client reasonably understood the conference to be confidential' " notwithstanding the presence of third parties. *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir.1984) (quoting McCormick on Evidence, § 91 at 189 (1972)); *see also State v. Fodor*, 179 Ariz. 442, 448, 880 P.2d 662, 668 (App.1994) ("The test for determining whether a communication is protected by the attorney-client privilege is a subjective one; it focuses primarily on the state of mind of the client.").

¶ 12 The third parties present in the instant case were Doyle's parents, who had hired and paid for counsel on their son's behalf. The clear indication is that they were taking an understandable parental interest and advisory role in their minor son's legal affairs. The presence of a parent in such a capacity at a meeting between child and counsel does not defeat the attorney-client privilege. *Kevlik*, 724 F.2d at 849; *Bigos*, 459 F.2d at 643; *Rosati v. Kuzman*, 660 A.2d 263, 266 (R.I.1995). We therefore agree with the trial court's ruling that the presence of Doyle's parents did not constitute a waiver of the attorney-client privilege.

¶ 13 Defendant also contends that by limiting his cross-examination of Doyle, the trial court violated his rights, under the United States and Arizona constitutions, to confront the witnesses against him.

Despite defendant's failure to raise this issue below, a trial judge who excludes testimony that would show bias or interest of a State's witness may commit reversible error even if defendant fails to object on this basis when the context of the questioning makes the purpose clear. *Towery*, 186 Ariz. at 176, 920 P.2d at 298 (1996).

¶ 14 Under some circumstances, the interest of confidentiality which forms the foundation for the attorney-client privilege "can be 'outweighed by [the defendant's] right to probe into the influence of possible bias in the testimony of a crucial identification witness.' " *Id.*, quoting *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Where, however, there is other ample evidence of bias or other possible motives presented to the jury to impeach the witness's testimony, the trial court does not abuse its discretion in limiting cross-examination based on a claim of a privilege. *Id.* at 177, 920 P.2d at 299.

¶ 15 In determining whether a trial court's refusal to allow cross-examination by defendant into privileged area is prejudicial, the question is

> whether defendant's inability to make the inquiry created substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony. To answer that question the court must look to the record as a whole and to the alternative means open to the defendant to impeach the witness. The court must ultimately decide whether the probative value of the alleged privileged communication was such that the defendant's right to effective cross-examination was substantially diminished.

*Id.*, quoting *United State ex. rel. Blackwell v. Franzen*, 688 F.2d 496, 500–01 (7th Cir.1982).

¶ 16 The record indicates that defense counsel was through cross-examination able to fully develop Doyle's role in the accident, the State's subsequent grant of immunity, and Doyle's possible motives for testifying against defendant, even in the absence of questioning Doyle regarding the content of his conversations with counsel. Accordingly, defense counsel was given an adequate op-

portunity to test the truthfulness of Doyle's direct testimony. Under these circumstances, there was no abuse of discretion by the trial court in upholding the privilege. *See id.* at 178, 920 P.2d at 300.

¶ 17 Defendant further argues that the State lacked standing to object to his cross-examination of Doyle based on attorney-client privilege. Because defendant failed to raise this issue in the trial court, it has been waived on appeal absent fundamental error. *State v. Gendron,* 168 Ariz. 153, 154–55, 812 P.2d 626, 627–28 (1991). Error is fundamental when it goes to the foundation of the defendant's case or is "of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial." *State v. Smith,* 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977). In the present case, if defendant had raised the issue of whether the State could properly assert the privilege on behalf of Doyle, either Doyle or his counsel, who was in attendance in the courtroom, could have promptly cured this procedural matter by joining in the objection. *See State v. Totress,* 107 Ariz. 18, 20, 480 P.2d 668, 670 (1971)(noting purpose of waiver rule is to permit court and parties to cure any error, if one is present). Further, as discussed above, defendant's inability to cross-examine Doyle about his privileged conversations did not result in any prejudice to him in regards to being able to fully present his defense at trial. Accordingly, no fundamental error can be found as it relates to this standing issue.

## C. The trial court did not err in permitting the State to impeach a witness with prior inconsistent statements.

¶ 18 At trial, Doyle initially testified that he did not know how fast his car was going and that he was never driving side-by-side with defendant's car. Later in his testimony, however, Doyle admitted telling a police officer at the scene that he was going 60 miles-an-hour. Officer Michael Walsh was then called by the State to testify regarding his contact with Doyle at the scene. Over objection, Officer Walsh was permitted to testify that Doyle told him that he was going around 80 miles-per-hour and that he and defendant were "kind of" racing.

¶ 19 Relying on *State v. Cruz,* 128 Ariz. 538, 627 P.2d 689 (1981), and *State v. Allred,* 134 Ariz. 274, 655 P.2d 1326 (1982), defendant argues that the trial court erred in permitting the State to improperly use impeachment testimony for substantive purposes. We review decisions by the trial court regarding the relevance and admissibility of evidence for abuse of discretion. *State v. Bible,* 175 Ariz. 549, 576, 858 P.2d 1152, 1179 (1993).

¶ 20 A prior inconsistent statement by a witness subject to cross-examination concerning the statement is not hearsay. Ariz. R. Evid. 801(d)(1)(A) (2003). In *Allred,* however, our supreme court held that a statement otherwise admissible under Rule 801(d)(1)(A) should be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of prejudice, confusion or misleading the jury." 134 Ariz. at 278, 655 P.2d at 1330. The court further listed five factors to be considered in assessing the danger of unfair prejudice:

1) the witness being impeached denies making the impeaching statement, and

2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or

3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, ...

4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness,

5) the impeachment testimony is the only evidence of guilt.

134 Ariz. at 277, 655 P.2d at 1329. These factors are not to be applied mechanistically, but rather analyzed on a case-by-case basis. *State v. Miller,* 187 Ariz. 254, 259, 928 P.2d 678, 683 (App.1996).

¶ 21 In the present case, only the fourth factor arguably militates against the admission of the impeachment testimony, *i.e.,* the true purpose of the impeachment is the substantive use of the statement rather than impeachment of the witness. As for the other factors, this is not a case where the

witness denied the existence of any such conversation. *Cf. Cruz*, 128 Ariz. at 539, 627 P.2d at 690 (witness denied speaking with both defendant and impeachment witness about the subject). Doyle acknowledged discussing his driving and speed with the officer; the only dispute involved the exact particulars of their conversation.

¶ 22 In addition, contrary to defendant's contention, Officer Walsh does not have an interest in the outcome of the proceeding. *See Miller*, 187 Ariz. at 258, 928 P.2d at 682 ("A police officer is not per se 'interested' merely by virtue of his or her involvement in a criminal investigation, absent evidence of some personal connection with the participants or personal stake in the case's outcome."). Moreover, there are no other factors present affecting the reliability of the officer's testimony.

¶ 23 Finally, the impeachment testimony offered by Officer Walsh was not the sole evidence of defendant's guilt. There was substantial evidence including eyewitness testimony, physical evidence, and admissions by defendant to support the convictions. Nothing suggests that jury consideration of Doyle's prior inconsistent statements, in determining defendant's guilt, was either unfair or unjust. Under these circumstances, we conclude that the trial court did not abuse its discretion by permitting the use of Doyle's impeachment testimony.

**D. The trial court did not abuse its discretion in overruling defendant's hearsay objection to a comment made by an eyewitness to defendant's actions.**

¶ 24 The State called Ben Cicotte and his girlfriend Stacy Kutz as fact witnesses. They were in front of Cicotte's house near the Warner–Elliot Loop when defendant and Doyle drove by. Their attention was first drawn to the Loop by the sounds of automobile engines roaring as they accelerated. Looking towards the Loop, they observed two cars, side-by-side, race past at about 80 miles-per-hour. As the two cars went by, Cicotte turned to Kutz, and stated, "There goes your Fast and Furious movie." Within seconds thereafter, the two heard a loud crash and the squealing of tires.

¶ 25 Defendant argues that the trial court erred in admitting Cicotte's reference to "The Fast and The Furious" because it is hearsay and no exception permits its admission. *See* Ariz. R. Evid. 802 (2003). "The Fast and The Furious" was a popular motion picture released earlier in 2001 about street racing. The obvious import of Cicotte's statement is that the two vehicles he and Kutz had observed were racing. Thus, the statement constitutes hearsay. *See* Ariz. R. Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."). As such, the statement was inadmissible unless subject to an exception.

¶ 26 One recognized exception to the hearsay rule is a "present sense impression." See Ariz. R. Evid. 803(1). To qualify under 803(1), a statement must describe or explain an event or condition and be "made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.* Here, the comment made by Cicotte directly described the actions of the cars driven by defendant and Doyle. It was made while he was perceiving the event and accurately explained the nature of the actions. The testimony by Cicotte and Kutz was more than sufficient to permit the trial court to conclude that Cicotte's reference to "The Fast and The Furious" constituted a "present sense impression" under Rule 803(1). Thus, there was no abuse of discretion by the trial court in overruling defendant's objection.

¶ 27 Defendant further maintains that Cicotte's comment was extremely prejudicial because the "The Fast and The Furious" purportedly depicted "punks and thugs engaging in highly illegal activity." Rule 403 of the Rules of Evidence permits the exclusion of otherwise admissible evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." By failing to object to Cicotte's comment on this basis at trial, however, defendant has waived any such claim on appeal. *State v. Walden*, 183 Ariz. 595, 611, 905 P.2d 974, 990 (1995);

*State v. Gonzales,* 181 Ariz. 502, 511, 892 P.2d 838, 847 (1995).

### E. The trial court did not err in its instruction to the jury on the element of causation.

¶ 28 Defendant also contends that the trial court erred in instructing the jury with respect to the element of causation. Defendant, during the settlement of jury instructions, submitted the following instruction regarding the element of causation:

> To warrant a conviction for second-degree murder, reckless manslaughter, or negligent homicide the death must be the natural and continuous consequence of the unlawful act and not the result of an independent intervening cause in which the accused does not participate, and which he could foresee [sic]. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a defense to a charge of second degree murder, reckless manslaughter and negligent homicide.

¶ 29 Although the trial court did not give the instruction proposed by defendant, the court did instruct the jury on the "defense" of superseding cause as follows:

> It is a defense to the charge of Second Degree Murder, Reckless Manslaughter and Negligent Homicide that the victim's death was not the result of any criminal conduct on the part of the Defendant, but that it resulted from a superseding cause. In regard to causation, an intervening event becomes a superseding cause only when its occurrence was both unforeseeable and when with the benefit of hindsight it may be described as abnormal or extraordinary.

This instruction conformed with the language approved by our supreme court in *State v.*

*Bass,* 198 Ariz. 571, 575–76, ¶¶ 11–14, 12 P.3d 796, 800–01 (2000).

¶ 30 Defendant objected to the trial court's failure to give his requested instruction. Defendant also requested that the trial court modify the instruction to include language that "once an intervening event has been shown or raised, it's the obligation of the government or the State to disprove it beyond a reasonable doubt." The trial court denied defendant's request. The trial court explained that the instructions were clear and that the State has the burden of proof on all elements of the offenses, including causation.[3]

¶ 31 On appeal, defendant now argues that the trial court erred by failing to instruct the jury that he—defendant—had the burden of proving the existence of a superseding cause by a preponderance of the evidence. The gist of defendant's argument is that, because superceding cause is an affirmative defense, he has the burden in the first instance of proving the defense pursuant to A.R.S. § 13–205(A) (2001). This statute provides:

> Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence, including any justification defense under chapter 4 of this title.

Once he has met that initial burden, however, the State must then "prove that the superceding cause does not relieve the accused of liability beyond a reasonable doubt." According to defendant, the trial court's failure to instruct the jury on his burden of proof regarding superseding cause constitutes fundamental error because "[it removes] a step" and thereby creates confusion in regards to the analysis the jury is to undertake in determining whether the State has met its burden of proof.

¶ 32 The flaw in defendant's argument is that "superseding cause" is not an affirmative defense, and therefore, he has no burden of proving anything in regards to the element of causation. Because causation is an element of the charged offense, the State

---

**3.** In closing argument, defense counsel argued, without objection, that the cause of Mr. Welch's death was not the intoxication or excessive speeding of defendant, but rather the "scare tactics" and speeding of Doyle (from whom defendant allegedly was speeding to "escape") and the actions of Mr. Welch in "freezing" his vehicle on the roadway before the collision.

has the burden of proving causation. Although, "superseding cause" is referred to in the instruction as a "defense," that does not render it an affirmative defense subject to the burden of proof established in A.R.S. § 13–205. It simply explains to the jury the circumstances under which a defendant is not considered the cause of the death in question. In this sense, it is not unlike an instruction on the "defense" of "mere presence." *See generally State v. Portillo*, 179 Ariz. 116, 876 P.2d 1151 (App.1994)(holding "mere presence" instruction required in money laundering trial), *aff'd in part, vacated in part*, 182 Ariz. 592, 898 P.2d 970 (1995). Just as a defendant has no burden of proving his "mere presence" to avoid conviction, a defendant has no obligation to establish the existence of a superseding cause. Instead, it is the State's burden to prove all elements of the offense, beyond a reasonable doubt. The purpose of such instructions, therefore, is to guide the jury with respect to the law when it considers whether the State met its burden of proving all the elements of the offense. Thus, we find no error, fundamental or otherwise, in the trial court's instruction to the jury.

¶ 33 When considering any claim of error in jury instructions, we examine the "instructions in their entirety in determining whether they adequately reflect the law." *State v. Rutledge*, 197 Ariz. 389, 393 ¶ 15, 4 P.3d 444, 448 (App.2000). We will not reverse a conviction, based on a claim of error with respect to jury instructions, "unless we can reasonably find that the instructions, when taken as a whole, would mislead the jurors." *State v. Strayhand*, 184 Ariz. 571, 587, 911 P.2d 577, 593 (App.1995). We find that the trial court correctly instructed the jury both on (1) all the elements of the offenses and on (2) the State's burden of proof with respect to each of those elements. We perceive nothing in the instructions that would confuse the jurors regarding the State's burden of proof. Defendant's claim

of error in the instructions is therefore without merit.

**F. The trial court did not err in refusing to instruct the jury on the offense of reckless driving.**

¶ 34 Finally, defendant argues that the trial court erred in denying his request to instruct the jury on reckless driving as a lesser-included offense of second-degree murder. An offense is considered a lesser-included of a greater offense "if (1) the included offense is always a constituent part of the greater offense or (2) if the charging document described the lesser offense even though it would not always form a constituent part of the greater offense." *State v. Corona*, 188 Ariz. 85, 88, 932 P.2d 1356, 1359 (App.1997).

¶ 35 Reckless driving is not always a constituent part of second-degree murder because it requires the proof of an element—driving a vehicle—that is not required for second-degree murder. *State v. Magana*, 178 Ariz. 416, 418, 874 P.2d 973, 975 (App. 1994). Defendant contends, however, that *Magana* supports his claim to the instruction under the second prong of the test. In *Magana*, this court held that the trial court erred in refusing to instruct on reckless driving where the language of the indictment implied that an automobile was used in committing the offense. *Id.* at 418, 874 P.2d at 975. Unlike *Magana*, the indictment in the present case made no reference, direct or implied, to the use of an automobile in the causing of death.[4] Because reckless driving is neither by its nature always a constituent part of second-degree murder nor described in the indictment, there was no error by the trial court in refusing to instruct the jury on that offense. *State v. Gooch*, 139 Ariz. 365, 367, 678 P.2d 946, 948 (1984).

**CONCLUSION**

¶ 36 Defendant's convictions and sentences are affirmed.

---

4. The indictment reads:
    COUNT 1: SCOTT G. SUCHAREW (A), on or about the 4th day of July, 2001, without premeditation, under circumstances manifesting extreme indifference to human life, recklessly engaged in conduct which created a grave risk of harm of death and thereby caused the death of STEVE B. WELCH, in violation of A.R.S. §§ 13–1101, 13–1104, 13–501, 13–701, 13–702, 13–702.01, and 13–801.

CONCURRING: JAMES B. SULT, Presiding Judge and PATRICK IRVINE, Judge.