319 P.3d 231

Stacy Elizabeth ACCOMAZZO,
Petitioner,

v.

The Honorable Michael W. KEMP, Judge
of the Superior Court of the State of
Arizona, in and for the COUNTY OF
MARICOPA, Respondent Judge,

Wade Trotter Accomazzo, Real
Party in Interest.

No. 1 CA–SA 13–0203.

Court of Appeals of Arizona,
Division 1.

Jan. 21, 2014.

Franks, Sheldon & Houser, P.C., Phoenix By Todd Franks, Robert C. Houser, Sara A. Swiren, Counsel for Petitioner.

Hallier & Lawrence PLC, Phoenix By Andrea C. Lawrence, Nicole Siqueiros–Stoutner, Counsel for Real Party in Interest.

Judge PETER B. SWANN delivered the opinion of the Court, in which Presiding Judge DONN KESSLER and Judge MAURICE PORTLEY joined.

## OPINION

SWANN, Judge.

¶ 1 In this special action, we hold that the attorney-client privilege is not automatically waived when a party challenges the enforceability of an agreement that was the subject of an attorney-client consultation.

¶ 2 In the underlying divorce case, the parties dispute the enforceability of a prenuptial agreement (the "Agreement") providing for the division of property in the event of divorce. The superior court ruled that because Wife challenged the enforceability of the Agreement, she waived the attorney-client privilege with respect to the attorney who advised her during the Agreement's negotiation. We issued an order accepting jurisdiction and granting relief with a written opinion to follow. This is that opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Husband and Wife married and executed the Agreement in 1998. Attorney Wayne Smith represented Husband in the negotiation of the Agreement, and attorney Michael Cohen represented Wife.

¶ 4 In 2012, Wife filed a petition for dissolution of marriage. The parties then filed competing motions for partial summary judgment regarding the Agreement's enforceability. Wife contended that the Agreement was unenforceable under theories of breach of fiduciary duty, failure of consideration, lack of voluntariness, and unconscionability, all based on Husband's alleged failure to fully disclose his income and assets during the Agreement's negotiation. Wife further contended that the Agreement was unenforceable because it was unintelligible, Husband had materially breached it, and it was effectively a postnuptial agreement that did not meet the legal criteria for such agreements.

¶ 5 The superior court denied both parties' motions for partial summary judgment, finding genuine disputes of material fact regarding whether Husband made full financial disclosure, whether Wife executed the Agreement before the marriage, and whether Wife entered the Agreement under duress. The court then set an evidentiary hearing concerning the Agreement's validity.

¶ 6 Wife sought to depose Husband's former counsel, and Husband sought to depose Wife's former counsel. Husband further moved for an order that Wife had waived attorney-client privilege and confidentiality with respect to Cohen because (1) she had placed privileged information at issue, and (2) her parents had attended meetings with Cohen. Over Wife's objection, the court found waiver and ordered Cohen to "disclose any information related to his representation of Wife during the negotiation and signing of the parties' Pre–Nuptial Agreement at deposition and any subsequent trial testimony."

¶ 7 This special action followed. We accepted jurisdiction over this special action because there is no equally plain, speedy, or adequate remedy by appeal. *Twin City Fire*

*Ins. Co. v. Burke,* 204 Ariz. 251, 252, ¶ 3, 63 P.3d 282, 283 (2003).

## DISCUSSION

¶ 8 With some exceptions that Husband does not allege here, "[i]n a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." A.R.S. § 12–2234(A); *see also* Ariz. R. Sup.Ct. 42, E.R. 1.6(a) ("A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent. . . ."). The client may, however, impliedly waive the attorney-client privilege. *Elia v. Pifer,* 194 Ariz. 74, 82, ¶ 40, 977 P.2d 796, 804 (App.1998). Whether waiver has occurred is a mixed question of law and fact that we review de novo. *Burke,* 204 Ariz. at 254, ¶ 10, 63 P.3d at 285. For the reasons set forth below, we hold that Wife did not waive the privilege.

## I. WIFE DID NOT PLACE PRIVILEGED INFORMATION AT ISSUE.

¶ 9 When a party affirmatively places privileged communications at issue, it waives the attorney-client privilege. *State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52, 58, ¶ 16, 13 P.3d 1169, 1175 (2000). The test we apply is "whether the client asserting the privilege has interjected the issue into the litigation and whether the claim of privilege, if upheld, would deny the inquiring party access to proof needed fairly to resist the client's own evidence on that very issue." *Id.* at 62, 13 P.3d at 1179 (2000) (quoting Restatement (Third) of Law Governing Lawyers § 80 cmt. b). In other words, a party cannot use privileged information as a sword while asserting the privilege as a shield. *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 158, 382 P.2d 560, 568 (1963). The bare assertion of a claim or defense does not necessarily place privileged communications at issue in the litigation, and the mere fact that privileged communications would be relevant to the issues before the court is of no consequence to the issue of waiver. As a matter of common law and legislative policy, the privilege serves as a narrow impediment to the search for the truth, and "the party that would assert the privilege has not waived unless it has asserted some claim or defense, such as the reasonableness of its evaluation of the law, which necessarily includes the information received from counsel." *Lee,* 199 Ariz. at 62, ¶ 28, 13 P.3d at 1179.

¶ 10 Here, Husband contends that Wife "injected into this case factual issues about disclosure of information, whether Wife was under duress during the negotiation and signing of the Pre-nuptial Agreement, and the date Wife signed [the] Pre-nuptial Agreement." Husband is correct that Wife has placed these matters at issue. His waiver argument fails, however, because Wife has not used privileged communications in aid of her position.

¶ 11 First, while Wife's attack on the Agreement's intelligibility could well *relate* to her communications with counsel, there is nothing in the record to suggest that she has based her legal position on the fact or content of those communications. A party may place the advice of counsel at issue by asserting that she acted based on counsel's explanation of a document's legal significance. But Wife has not done so here. Instead, she has argued that "[a]n inexperienced, legally unsophisticated woman, under emotional and time pressure, could not conceivabl[y] digest and comprehend the structure and consequences" of the Agreement, and that the Agreement as written defied interpretation "[e]ven with the assistance of counsel." This argument is a general criticism of the agreement's wording, not a disclosure of communications between Wife and her attorney, or even an admission that her attorney actually attempted to interpret any provision of the agreement in dispute. To be sure, Wife's insistence on maintaining the privilege may damage her position on the merits because she may be unable to inform the court of facts that might bear on her level of understanding. But the decision to waive the privilege rests with the client.

¶ 12 Second, Wife's contention that Husband failed to disclose financial information in no way implicates her communications

with Cohen. Even if Husband's disclosures were the subject of legal advice she received, Wife has not mentioned any such communications. Finally, we see nothing about Wife's position concerning the dispute over the Agreement's effective date or Husband's alleged breach that rely in any way on her communications with counsel.

## II. THE RECORD DOES NOT SUPPORT THE SUPERIOR COURT'S FINDING THAT THE PRESENCE OF WIFE'S PARENTS CAUSED WAIVER.

¶ 13 Wife concedes that her parents attended at least some meetings with Cohen. By declaration, she avowed:

4. Before Mr. Cohen was engaged to represent me, I never previously retained an attorney for any purpose[ ]. Due to my lack of experience with legal matters and how upset I was when [Husband] presented the prenuptial agreement, I relied upon my parents to assist me when [Husband]'s lawyer delivered a first draft of a prenuptial agreement.

5. [Husband] did not even give the first draft of the prenuptial agreement directly to me—he faxed the first draft to my mother. I then saw the agreement when I met with my parents in their home and they gave me the agreement [Husband]'s lawyer sent to them. I did not understand the document [Husband] delivered and I needed my parents' help to try to understand what was happening and what impact the agreement had on me. However, my parents also found the agreement difficult to understand and to explain to me.

6. I relied on my parents to assist me with the prenuptial agreement. They did so, as my representatives, by finding Mr. Cohen, first meeting with Mr. Cohen regarding the representation before I ever did so, by paying Mr. Cohen for his retention and for his services, and by participating in some of my meetings/interactions with Mr. Cohen. My parents remained involved for the purpose of supporting me

and helping me understand the proposed terms and the ongoing process.

7. I believed my communications with Mr. Cohen, including those where my parents were present, were confidential. I also believed the communications of my parents with Mr. Cohen, as my representatives, were confidential.

¶ 14 A client may waive the attorney-client privilege when she discloses confidential communications to a third party. *Ulibarri v. Superior Court (Gerstenberger)*, 184 Ariz. 382, 385, 909 P.2d 449, 452 (App. 1995). The presence of a third party at an attorney-client conference will therefore cause waiver, unless "the third party's presence does not indicate a lack of intent to keep the communication confidential." *State v. Sucharew*, 205 Ariz. 16, 22, ¶ 11, 66 P.3d 59, 65 (App.2003).

¶ 15 The critical question is "whether the client reasonably understood the conference to be confidential notwithstanding the presence of third parties." *Id.* (citation omitted) (internal quotation marks omitted). We have held, therefore, that the presence of a juvenile criminal defendant's parents did not cause waiver of the attorney-client privilege when "[t]he clear indication [wa]s that [the parents, who had hired and paid for counsel,] were taking an understandable parental interest and advisory role in their minor son's legal affairs." *Id.* at ¶ 12; *see also State v. Archibeque*, 223 Ariz. 231, 235–37, ¶¶ 15–21, 221 P.3d 1045, 1049–51 (App.2009) (no waiver of clergy-penitent privilege based on presence of defendant's wife when conferences included marital counseling and clergyman assured defendant and wife that conferences would be confidential). Absent a contrary showing, we presume that when a client authorizes a parent to participate in conferences with her attorney regarding the client's personal matter, and the client and the parent have no adverse interest with respect to that matter, the client has a reasonable expectation that the conferences will be confidential.[1] (Of course, the client

---

1. In some circumstances—such as when the subject of the consultation is one that may directly or indirectly affect the parent—the parent's participation may establish an attorney-client rela-

tionship between the attorney and the parent as well. *See, e.g., Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 148–49, ¶ 10, 24 P.3d 593, 595–96 (2001) (attorney-client relation-

then assumes the risk that the parent may vitiate the privilege by voluntarily disclosing the communications). *See* Restatement (Third) of Law Governing Lawyers § 79 & cmts. c, h (attorney-client privilege may be waived when client's authorized agent discloses privileged information in unprivileged communication).

¶ 16 Here, Husband presented no evidence to rebut the presumption that Wife reasonably believed that communications with Cohen remained confidential despite her parents' participation. Nor did Husband present any evidence to show that Wife's parents waived the privilege by voluntarily disclosing the communications.

## III. HUSBAND MAY NOT DISCOVER THE ATTORNEY'S MENTAL IMPRESSIONS.

¶ 17 Wife also contends that the work-product doctrine prevents Husband from questioning Cohen about his impressions of Wife's state of mind and knowledge during the Agreement's negotiation. Though the superior court did not rule expressly on this issue, it ordered broadly that Cohen could disclose "any information related to his representation of Wife during the negotiation and signing of the parties' Pre-Nuptial Agreement." The order's reference to "any information" presumably includes Cohen's mental impressions.

¶ 18 The parties do not genuinely dispute that the Agreement was prepared in anticipation of litigation and is therefore subject to the protection of the work-product doctrine. To the extent that documents or other tangible items reflect Cohen's mental impressions, the work-product doctrine provides those items absolute protection from discovery. Ariz. R. Civ. P. 26(b)(3); *Brown v. Superior Court (Cont'l Nat'l Assurance, Inc.)*, 137 Ariz. 327, 337 n. 8, 670 P.2d 725, 735 n. 8 (1983). And to the extent that Cohen otherwise holds impressions regarding Wife's understanding of the Agreement, his impressions are undiscoverable to the extent they

are based on information learned in the course of his representation of Wife.

## CONCLUSION

¶ 19 We vacate the order allowing Wife's former counsel to disclose all information related to the representation. Counsel may not disclose privileged information or information protected under the work-product doctrine absent a legally recognized waiver.

¶ 20 Wife requests attorney's fees and costs under Ariz. R.P. Spec. Act. 4(g) and A.R.S. § 25–324. Husband also requests attorney's fees and costs but cites no authority in support of his request. We deny Wife's request in the exercise of our discretion, and we deny Husband's request based on his failure to state the basis for the requested award. *See* ARCAP 21.

---

ship does not require express agreement, but arises when both the attorney's and the client's conduct manifests the intent that the attorney provide legal services for the client, and the client reasonably believes that the attorney represents him).