NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CRISTINA GELVIN, *Petitioner*,

*v.*

THE HONORABLE AMANDA PARKER, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, *Respondent Judge,*

KERR GELVIN, *Real Party in Interest.*

No. 1 CA-SA 24-0252

FILED 04-01-2025

---

Petition for Special Action from the Superior Court in Maricopa County
No. FN2023-002515
The Honorable Amanda M. Parker, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Jeffrey G. Pollitt P.C., Phoenix
By Jeffrey G. Pollitt
*Co-Counsel for Petitioner*

Rai Duer, P.C.
By Peter B. Swann
*Co-Counsel for Petitioner*

Woodnick Law, PLLC, Phoenix
By Markus Risinger
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Angela K. Paton joined. Judge Daniel J. Kiley delivered a special concurrence, which Presiding Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

**¶1**   This special action arises out of proceedings to dissolve the marriage of Cristina Gelvin ("Cristina") and Kerr Gelvin ("Kerr").[1] Cristina seeks relief from the superior court's order compelling disclosure of certain communications involving her counsel and her mother.

**¶2**   Because the disputed communications involving Cristina's counsel and her mother are protected by the attorney-client privilege under principles established in *Accomazzo v. Kemp ex rel. Cnty. of Maricopa*, 234 Ariz. 169 (App. 2014), we accept special action jurisdiction and grant relief.

### FACTUAL AND PROCEDURAL HISTORY

**¶3**   Cristina and Kerr were married in 1999. Throughout their marriage they enjoyed a comfortable lifestyle that was funded, at least in part, by disbursements from certain trusts established by Cristina's parents.

**¶4**   In June 2023, Cristina filed a petition for dissolution. She also signed a form entitled "Consent to Communicate Without Waiver of Confidentiality" (the "Authorization") which provides in part that Cristina "consent[s] to and authorize[s]" her counsel "to communicate in any manner" with her mother, Ursula Gebert ("Gebert"), "about any and all issues regarding [Cristina's] divorce action," and to "release to [Gebert] any information and any documents and records of any nature related to the divorce action." The Authorization goes on to provide:

---

[1] For clarity, we refer to parties who share a last name by their first names.

In accordance with my attorney's advice regarding the holding in [*Accomazzo*], it is my intention to maintain the confidentiality of all communications and all information shared with [Gebert] and to retain the attorney client privilege relative to same.

¶5 The Authorization includes an "acknowledgement" signed by Gebert stating:

In accordance with the foregoing and consistent with the holding in [*Accomazzo*], I understand and acknowledge that any information I receive from [Cristina's counsel], including without limitation, all written and oral communications, documents and records of any nature related to the divorce action of [Cristina] are being shared with me with the expectation that all such communications and information will remain privileged, confidential and will not be shared with any other individuals.

¶6 Kerr served discovery requests relating to Cristina's interests in the trusts established by her parents, asserting that such information was relevant to establishing Cristina's financial condition for purposes of spousal maintenance and attorney fees. Kerr first served a request for production of documents ("RFP") for "[d]ocumentation evidencing any income, principal disbursement, or receipt of funds or property of any type that [Cristina] received as a beneficiary of any trust since January 2017." Kerr then served a second RFP seeking "[c]opies of any and all written communications" between Cristina's divorce attorney and her parents' estate planning counsel, "[c]opies of any and all written communications" between Cristina's divorce attorneys and her parents, and "[c]opies of any and all time entries for . . . communications between" Cristina's counsel and her parents' counsel. Finally, Kerr served a third RFP for documentation seeking information on the source of income for Cristina's many living expenses. Cristina objected to these RFPs.

¶7 In September 2024, Kerr filed a motion to compel. After briefing and argument, the court issued a written ruling in November 2024, denying Kerr's request to compel disclosure of written communications between Cristina's counsel and her parents' counsel, and billing records reflecting such communications. The court also held that communications between Cristina and her attorney to which Gebert was privy were protected by the attorney-client privilege and principles established in *Accomazzo*.

**¶8** The court ordered the disclosure, however, of "independent communications" between Cristina's counsel and Gebert "that were not designed to either merely inform [Gebert] about the divorce proceedings or to memorialize the mental impressions of [Cristina's] counsel." Cristina then filed this petition for special action to challenge this portion of the court's November 2024 ruling.

## SPECIAL ACTION JURISDICTION

**¶9** Special action jurisdiction is appropriate when a party has no equally plain, speedy and adequate remedy by appeal. *See* Ariz. R.P. Spec. Act. 12(a).[2] Because an appeal is not an adequate remedy from an order compelling the disclosure of "potentially privileged information," *Grubaugh v. Blomo ex rel. Cnty. of Maricopa*, 238 Ariz. 264, 266, ¶ 4 (App. 2015) (citations omitted), "a special action is the proper means to seek relief when a party believes a trial court has ordered discovery of material protected by a privilege or work product shield." *Salvation Army v. Bryson*, 229 Ariz. 204, 205, ¶ 1 (App. 2012) (cleaned up); *see McGlothlin v. Astrowsky*, 255 Ariz. 449, 455, ¶ 12 (App. 2023) (noting that "this Court has . . . often exercised special action jurisdiction when the superior court orders documents produced after overruling a privilege objection" (citation omitted)). Accordingly, we accept special action jurisdiction.

## DISCUSSION

**¶10** Cristina asserts that the superior court abused its discretion by ordering disclosure of "independent communications" between her counsel and her mother, asserting that the court's ruling was inconsistent with *Accomazzo*. She allowed her mother to engage in communications with her attorney "with an express, written commitment to confidentiality," Cristina maintains, and "the plain language of *Accomazzo*" brings those communications within the scope of the attorney-client privilege. In response, Kerr contends that the court correctly compelled the disclosure of the disputed communications because, he contends, "*Accomazzo* does not

---

[2] The Arizona Supreme Court revised the Arizona Rules of Procedure for Special Actions, effective January 1, 2025. These new rules apply in all special actions pending on that date, including this one, unless doing so would be infeasible or cause injustice. *See* Ariz. R.P. Spec. Act. 1 Application Note. As applying the new rules in this case would not be infeasible or cause injustice, we apply them here.

protect" a lawyer's "communications with a third party where the client [is] not present."

**¶11** The attorney-client privilege prevents an attorney from disclosing, without his client's consent, information provided by the client and the advice given on the basis of that information in the course of the professional relationship. A.R.S. §§ 12-2234(A), 13-4062(2). "Whether the attorney-client privilege exists is a question of law" that is reviewed de novo. *State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360, ¶ 10 (2022) (citation omitted). "Whether a party has waived the attorney-client privilege is a mixed question of law and fact" that is also subject to de novo review. *Id.* (cleaned up).

**¶12** To establish that a particular communication is protected by the attorney-client privilege, the party asserting the privilege must show

> 1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential.

*McGlothlin*, 255 Ariz. at 457, ¶ 22 (quotation omitted). Because the privilege applies only to communications made "in confidence," *id.*, "the presence of a third person will usually defeat" a claim of privilege, *State v. Sucharew*, 205 Ariz. 16, 22, ¶ 11 (App. 2003) (cleaned up). "This general rule does not apply, however, where the third party's presence does not indicate a lack of intent to keep the communication confidential." *Id.* To determine whether a particular communication is privileged, the court must consider whether, at the time the communication was made, "the client reasonably understood the communication to be confidential." *Clements v. Bernini*, 249 Ariz. 434, 440, ¶ 11 (2020) (cleaned up).

**¶13** In *Accomazzo*, the wife challenged the enforceability of the prenuptial agreement she signed that governed the division of property in the event of divorce. 234 Ariz. at 171, ¶ 2. The wife had discussed the prenuptial agreement with her lawyer, Michael Cohen, and her parents. *Id.* at 171, 173, ¶¶ 6, 13. When the husband sought to depose Cohen, the wife objected, asserting that the attorney-client privilege applied both to her meetings with Cohen that her parents attended and to communications that occurred directly between Cohen and her parents, who were acting "as [her] representatives." *Id.* After the superior court found that the wife had waived the privilege by allowing her parents to participate in

communications with Cohen, the wife sought relief by special action. *Id.* at 171, ¶ 6. Granting relief, this court held that,

> [a]bsent a contrary showing, we presume that when a client authorizes a parent to participate in conferences with her attorney regarding the client's personal matter, and the client and the parent have no adverse interest with respect to the matter, the client has a reasonable expectation that the conferences will be confidential.

*Id.* at 173, ¶ 15 (footnote omitted). Because the husband "presented no evidence to rebut the presumption that [the wife] reasonably believed that communications with Cohen remained confidential despite her parents' participation," and in the absence of evidence that the privilege was waived through voluntary disclosure, this court vacated the superior court's order compelling the disclosure of those communications. *Id.* at 174, ¶¶ 16, 19.

**¶14**        *Accomazzo* is on point here. The Authorization that Cristina and her mother signed reflects their agreement to maintain the confidentiality of their communications with Cristina's counsel. There is no indication that either Cristina or her mother ever disclosed the contents of these communications, either intentionally or carelessly, with other individuals. *Cf. State v. Moody*, 208 Ariz. 424, 448, ¶ 79 (2004) (citing cases; "[O]ur case law on evidentiary privilege . . . suggest[s] that one who knows his conversation may be overheard and makes no effort to safeguard against interception may waive a claim of confidentiality."). The court made no finding that Cristina and Gebert have adverse interests, nor would anything in the record before us support such a finding.[3] Although Kerr asserts that *Accomazzo* does not apply to communications between Cristina's lawyer and her mother that occur outside of Cristina's presence, this assertion is contrary to *Accomazzo*'s holding that the privilege applied not only to conferences between the wife and her lawyer that her parents attended, but also to communications directly between the wife's lawyer and her parents. *See* 234 Ariz. at 173–74, ¶¶ 13–16. Under *Accomazzo*, therefore, communications between Cristina's lawyer and her mother are

---

[3] Although Kerr asserts that the "legal interests" of Cristina and Gebert "diverge[]" because Gebert and her husband have "filed suit against [him], alleging he misappropriated financial assets from them without authorization during the marriage," the fact that Kerr is an adverse party to Cristina in one case and Gebert in another does not establish that Cristina and Gebert have interests adverse to each other.

"presume[d]" to be within the scope of the attorney-client privilege. *See* 234 Ariz. at 173, ¶ 15.

¶15 Because nothing in the record suggests that Kerr met his burden of overcoming the presumption that Cristina reasonably understood that communications between her lawyer and her mother were privileged, we hold that Cristina did not waive the attorney-client privilege by authorizing communications between her mother and her lawyer in accordance with *Accomazzo*. Accordingly, we vacate the order requiring the disclosure of those communications.

¶16 Cristina raises the alternative argument that the superior court erred in compelling disclosure of her mother's communications with her lawyer because she and her mother share a "common interest" in the "substantial trust assets that are in play in [Cristina's] divorce," and therefore the communications between Cristina's counsel and Gebert are protected by the "common interest" doctrine.[4] Because we hold that Cristina did not waive the attorney-client privilege with respect to communications between her counsel and Gebert in view of her reasonable reliance on *Accomazzo*, we need not address Cristina's alternative argument.

## CONCLUSION

¶17 Because Cristina did not waive the attorney-client privilege by authorizing her attorney to communicate with her mother about her ongoing divorce proceedings in reliance on *Accomazzo*, we vacate the court's November 2024 order compelling the disclosure of communications between Cristina's attorney and Gebert "that were not designed to either merely inform [Gebert] about the divorce proceedings or to memorialize the mental impressions of [Cristina's] counsel."

———————————————

**K I L E Y,** Judge, joined by Presiding Judge Furuya, specially concurring:

———————————————

[4] The common interest doctrine protects communications between "two or more clients" who are "represented by separate lawyers" if they share "a common interest in a litigated or nonlitigated matter" and "agree to exchange information concerning the matter" on a confidential basis. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 141–42, ¶ 36 (App. 2003) (quoting Restatement (Third) of The Law Governing Lawyers § 76(1) (2000)).

**¶18**        We agree that, under principles established in *Accomazzo v. Kemp ex rel. Cnty. of Maricopa*, 234 Ariz. 169 (App. 2014), Cristina Gelvin ("Cristina") did not waive the attorney-client privilege by authorizing her lawyer to share confidential information with her mother. And we have no cause to revisit *Accomazzo*, since no party has asked us to. We therefore agree that Cristina is entitled to the relief she requests. We write separately, however, to note our doubts that the holding of *Accomazzo* can be squared with well-established principles governing the attorney-client privilege. In an appropriate case, therefore, a second look at *Accomazzo* may be warranted.

**¶19**        The attorney-client privilege applies only to communications made "in confidence," *McGlothlin v. Astrowsky*, 255 Ariz. 449, 457, ¶ 22 (App. 2023) (citation omitted), and so generally does not apply if a third party is present when communications are being exchanged. *See, e.g., State v. Sucharew*, 205 Ariz. 16, 22, ¶ 11 (App. 2003) ("[T]he presence of a third person will usually defeat the privilege on the ground that confidentiality could not be intended with respect to communications that the speaker knowingly allowed to be overheard by others foreign to the confidential relationship." (quotation omitted)). The privilege's scope is not, however, limited to private communications directly between the attorney and the client. On the contrary, as courts have long recognized, "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others." *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961). For that reason, the attorney-client privilege necessarily extends to communications with third parties who are members of an attorney's staff and others "who act as the attorney's agents." *Id.* (footnote omitted) (citations omitted); *see* A.R.S. § 12-2234(A) ("In a civil action . . . [a]n attorney's paralegal, assistant, secretary, stenographer or clerk shall not, without the consent of his employer, be examined concerning any fact the knowledge of which was acquired in such capacity."). Communications involving agents of the client, too, may fall within the scope of the privilege. A.R.S. § 12-2234(B).

**¶20**        Even in the absence of an agency relationship, courts have held that the presence of a third party at an attorney-client conference will not vitiate the privilege if the attorney and the client could not communicate effectively without the third party's participation. This principle is recognized, for example, when a language barrier between the attorney and the client necessitates the services of an interpreter. *See, e.g., People v. Osorio*, 549 N.E.2d 1183, 1186 (N.Y. 1989) (citations omitted). Similarly, a third party's participation in attorney-client conferences will not destroy the privilege if the attorney and client need the third party's help to

communicate specialized or technical information in a comprehensible manner. In *Kovel*, for example, a client who was under investigation for suspected income tax violations consulted an attorney, who, in turn, directed the client to share information with an accountant retained by the law firm. 296 F.2d at 919. When subpoenaed to testify before a grand jury, the accountant asserted that his communications with the client were protected by the attorney-client privilege. *Id.* On appeal, the Second Circuit Court of Appeals agreed, holding that the accountant's role was tantamount to that of an interpreter. *Id.* at 921. Reasoning that "[a]ccounting concepts are [often] a foreign language" to lawyers, the court held that "if the lawyer has directed the client . . . to tell his story . . . to an accountant . . . who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege." *Id.* at 922; *see Nat'l Steel Prods. Co. v. Superior Ct.*, 210 Cal. Rptr. 535, 538 (Cal. Ct. App. 1985) (holding, in litigation based on allegedly negligent construction of a building, that client's communications to "engineering expert" retained by lawyer "to provide a technical analysis" were protected by attorney-client privilege (citation omitted)); *Utah Dep't of Transp. v. Rayco Corp.*, 599 P.2d 481, 491 (Utah 1979) ("The attorney-client privilege protects [an expert's] report where the expert is required to examine the client, his personal affairs, or his property, or his mental impressions, in order to evaluate and transmit the same in a manner [to] which the client is unable, by reason of insufficient scientific or technical training.").

¶21        Together, these cases stand for the proposition that "the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see Dahl v. Bain Cap. Partners, LLC*, 714 F.Supp.2d 225, 228 (D. Mass. 2010) (noting that for the attorney-client privilege to apply to communications involving third parties, "the third party [must] play[] an interpretive role" by "translat[ing] information between the client and the attorney" (citations omitted)). To avoid waiver of the privilege, the participation of the third party must be essential to effectuate the purposes of the representation. *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) ("The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."). The third party, in other words, must be "a necessary conduit . . . for matters to be effectively communicated from the [client] to the attorney" or "through which legal advice" is "effectively communicated" to the client. *Riverkeeper, Inc. v.*

*Coeymans Recycling Ctr., LLC*, No. 1:20-CV-01025 (GTS/CFH), 2024 WL 1053507, at *10 (N.D.N.Y. Mar. 11, 2024) (citation omitted).

**¶22**      In keeping with these principles, courts have recognized that the participation of a client's family member in attorney-client conferences will not defeat the privilege if the family member enables the attorney and the client to communicate effectively. In *Stroh v. General Motors Corp.*, 623 N.Y.S.2d 873 (N.Y. App. Div. 1995), for example, the court held that the presence of an elderly client's adult daughter at an attorney-client conference did not destroy the privilege. *Id.* at 875. Noting that the client, who was being sued for allegedly causing a car accident that injured multiple people, was being told to "recall, and perhaps relive, what was probably the most traumatic experience of her life," the court held that her daughter's presence at the conference was necessary to put the "aged" client "sufficiently at ease to communicate effectively with counsel." *Id.* at 874; *accord Hendrick v. Avis Rent-A-Car Sys., Inc.*, 944 F.Supp. 187, 189–90 (W.D.N.Y. 1996) (holding that communications between a lawyer and the father of the client, a college student who was rendered a quadriplegic in an accident, were protected by the attorney-client privilege because the client's "injuries and paralysis" necessitated the assistance of his father "for the purpose of furthering [the client's] legal interests" (citations omitted)).

**¶23**      Conversely, courts have made clear that the presence of a client's family member at an attorney-client conference will destroy the privilege if the family member's assistance was not necessary to enable the lawyer to effectively represent the client. *See Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2015 WL 5693521, at *2 (D. Ariz. Sept. 29, 2015) (holding that no privilege attached to discussions at attorney-client conferences attended by client's father-in-law who "provid[ed] support" as "a friend" but whose presence "was not necessary to [the client's] communications with his counsel"); *see also State v. Shire*, 850 S.W.2d 923, 931–32 (Mo. Ct. App. 1993) (holding that no privilege attached to conversations between client and divorce attorney because client's daughter was present to provide moral support; "The presence of a third person . . . such as a relative or friend of the client, who is not essential to the transmission of information or whose presence is not reasonably necessary for the protection of the client's interest, will vitiate the privilege." (citation omitted)); *Molner v. Molner*, 218 N.Y.S.3d 53, 53 (N.Y. App. Div. 2024) (rejecting wife's claim that attorney-client communications involving her parents were present because "neither [the wife] nor her parents provided any evidence" to show that her parents' participation was "necessary to enable the attorney-client communication" (cleaned up)).

**¶24**        In *Accomazzo*, this Court held that attorney-client conferences to which the client's parents were privy were protected by the privilege even though — as far as the *Accomazzo* opinion indicates — there was no reason to believe that the presence of the client's parents was necessary to facilitate her communications with her attorney. 234 Ariz. at 173, ¶ 15. *Accomazzo* thus expanded the scope of the privilege to include a client's parents irrespective of whether their inclusion is necessary to effectuate the purposes of the representation.

**¶25**        In support of its holding, *Accomazzo* cites *Sucharew*, in which this Court held that a juvenile's conversation with his attorney was protected by the attorney-client privilege notwithstanding the presence of the juvenile's parents. *Sucharew*, 205 Ariz. at 22, ¶ 12. But *Accomazzo* fails to acknowledge a critical distinguishing fact, *i.e.*, unlike the wife in *Accomazzo*, the client in *Sucharew* was a "minor." *See Sucharew*, 205 Ariz. at 22, ¶ 12. Noting that the parents "were taking an understandable parental interest and advisory role in their minor son's legal affairs," *Sucharew* held that "[t]he presence of a parent in such a capacity at a meeting between [a] child and counsel does not defeat the attorney-client privilege." *Id.* (citation omitted). *Sucharew*'s holding that the presence of the juvenile's parents at an attorney-client conference did not vitiate the privilege comports with case law recognizing that a client's family member may attend an attorney-client conference without destroying the privilege if the client's age or infirmity makes the presence of a trusted family member necessary for the attorney to effectively represent the client. *See supra* ¶ 22. Nothing in *Sucharew*, however, supports extending its holding from clients who are minors to those who are competent adults.

**¶26**        *Accomazzo* also relies on *State v. Archibeque*, 223 Ariz. 231 (App. 2009), in which this Court held that the presence of a criminal defendant's wife during a meeting with a clergy member did not vitiate the clergy-penitent privilege. *Archibeque*, 223 Ariz. at 236–37, ¶ 19. The *Archibeque* court held that the inclusion of the defendant's wife during the otherwise private meeting was not "inconsistent with a desire to maintain" the clergy-penitent privilege because the meeting was part of "the repentance process" of the church to which the defendant and his wife belonged, and the clergy member "discussed marital issues" and "imparted spiritual advice concerning marriage" during the meeting. *Id.* at 236, ¶¶ 17, 19. Because the defendant in *Archibeque* and his wife were both receiving spiritual guidance from the clergy member, the *Archibeque* court's holding that their joint participation did not take the meeting outside the scope of the clergy-penitent privilege is hardly surprising. But nothing in *Archibeque*, or any other authority of which we are aware, supports *Accomazzo*'s holding

that a competent adult who is capable of handling her own legal affairs can include her parents in communications with her attorney without waiving the privilege.

¶27        *Accomazzo*'s expansion of the privilege is, in our view, irreconcilable with the familiar principle that the attorney-client privilege is to be narrowly construed because it impedes the truth-seeking function of the adjudicative process. *See Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 136, ¶ 14 (App. 2003) ("We narrowly construe constitutional, common law, and statutory privileges for they are in derogation of the search for truth." (cleaned up)); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) ("[S]ince the [attorney-client] privilege has the effect of withholding relevant information from the fact-finder, it applies only when necessary to achieve its purpose. Accordingly[,] it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." (citations omitted)).

¶28        *Accomazzo* further departs from settled principles by adopting a non-waiver presumption in favor of, rather than against, the party asserting a privilege claim. *See* 234 Ariz. at 173, ¶ 15. Prior to *Accomazzo*, courts were virtually uniform in declining "to assume the facts which would give rise to a privilege," *see, e.g.*, *State ex rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976), instead requiring the party asserting that a particular communication was privileged to establish the facts necessary to warrant such a finding. *See Steiger v. Superior Ct.*, 112 Ariz. 1, 3 (1975) ("When a privilege is asserted, the burden of establishing that a matter is privileged is upon the party claiming the privilege." (citation omitted)); *see also United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) (affirming determination that discussion at attorney-client meeting was not privileged due to presence of third party because client "could not show to the trial court's satisfaction that [the third party] was acting as an attorney or an agent at the meeting"). *Accomazzo* reversed this presumption, holding that attorney-client communications that include the client's parents will be deemed privileged unless and until the party seeking disclosure proves otherwise. *See* 234 Ariz. at 173, ¶ 15.

¶29        For the reasons set forth above, we believe that *Accomazzo* sets forth a novel interpretation of the attorney-client privilege at odds with decades of case law recognizing that the inclusion of a third party in attorney-client communications will vitiate the privilege unless the party asserting the privilege establishes that (1) the third party is an agent of the attorney or the client or (2) the third party's presence is necessary for the lawyer's effective representation of the client.

**¶30** Again, neither party has asked us to reconsider *Accomazzo*. In any event, it would hardly be fair to retroactively modify the scope of the attorney-client privilege as delineated in *Accomazzo* after the challenged communications have already taken place. After all, whether a particular communication with an attorney is privileged depends primarily on "whether the client reasonably understood the communication to be confidential." *Clements v. Bernini*, 249 Ariz. 434, 440, ¶ 11 (2020) (cleaned up). In light of *Accomazzo,* there was nothing unreasonable (or inaccurate) about Cristina's understanding of the scope of the privilege at the time she authorized her lawyer and her mother to exchange confidential information. Whether *Accomazzo* should be revisited, therefore, is a matter that must be left for another day, if raised in an appropriate case.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR