IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EVEREST INDEMNITY INSURANCE COMPANY, a Delaware
corporation, *Petitioner,*

*v.*

THE HONORABLE JOHN REA, Judge of the SUPERIOR COURT OF THE
STATE OF ARIZONA, in and for the County of MARICOPA, *Respondent
Judge,*

RUDOLFO BROS. PLASTERING, INC., an Arizona corporation;
WESTERN AGRICULTURAL INSURANCE COMPANY, an Arizona
corporation, *Real Parties in Interest.*

No. 1 CA-SA 14-0094
FILED 1-15-2015

Petition for Special Action from the Superior Court in Maricopa County
CV 2011-008576
The Honorable John Christian Rea, Judge

**JURISDICTION ACCEPTED, RELIEF GRANTED**

COUNSEL

Kunz Plitt Hyland & Demlong, Phoenix
By Steven Plitt, Joshua D. Rogers, Steven J. Gross
*Counsel for Petitioner,*

Holm Wright Hyde & Hays, PLC, Phoenix
By Kirk H. Hays, Jared M. Scarbrough
*Counsel for Real Parties in Interest*

## OPINION

Presiding Judge John C. Gemmill delivered the opinion of the Court, in which Judge Peter B. Swann joined. Judge Patricia A. Orozco dissented.

**G E M M I L L**, Judge:

¶1 The issue presented in this special action is whether Petitioner Everest Indemnity Insurance Company has impliedly waived the attorney-client privilege by asserting subjective good faith as a defense in this bad faith case. For the reasons that follow, we accept special action jurisdiction and grant relief.

## BACKGROUND

¶2 Everest challenges the trial court's order requiring production of documents it contends are privileged communications between it and its counsel. Real Parties in Interest Rudolfo Brothers Plastering and Western Agricultural Insurance Company (collectively "Rudolfo") argue that Everest impliedly waived the attorney-client privilege by defending against their bad faith claim on the basis of subjective good faith.

¶3 In the underlying case, Rudolfo claims that Everest committed bad faith by entering into a settlement agreement that exhausted the liability coverage of an Owner Controlled Insurance Program (OCIP) policy to the alleged detriment of certain insureds such as Rudolfo. Everest contends that the decision to settle was made in good faith based on its subjective beliefs concerning the relative merits of the various available courses of action.[1] Everest acknowledges that it communicated with counsel during the process of making that decision. The issue is whether Everest impliedly waived the attorney-client privilege regarding those

---

[1] Everest is also defending on the basis of objective reasonableness. The issue of implied waiver of the attorney-client privilege focuses, however, on the subjective good faith defense. *See State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 56–58, ¶¶ 9–15, 13 P.3d 1169, 1173–75 (2000) (explaining that generally no issue of implied waiver is presented when an insurer defends a bad faith case on the basis of objective good faith).

communications by asserting its subjective belief in the good-faith nature of its actions and by consulting with counsel during that period of time.

¶4        Acceptance of special action jurisdiction is highly discretionary.  Because an erroneous order compelling disclosure cannot be remedied by appeal, we exercise jurisdiction here.  *See, e.g.*, *Salvation Army v. Bryson*, 229 Ariz. 204, 205, ¶ 1, 273 P.3d 656, 657 (App. 2012).

## IMPLIED WAIVER OF ATTORNEY-CLIENT PRIVILEGE

¶5        The attorney-client privilege may be deemed waived when application of the privilege would deny an opposing party access to necessary information to counter a claim or defense asserted by the other party. *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 62, ¶ 28, 13 P.3d 1169, 1179 (2000).  It is not sufficient that the information sought is relevant or important to a claim or defense; the party holding the privilege must take steps to place the privileged information at issue.  In *Lee*, the Arizona Supreme Court explained that to waive the privilege, a party must do more than simply confer with counsel and take action incorporating counsel's advice.  *Id.* at 66, ¶ 38, 13 P.3d at 1183.  Waiver is implied when, after receiving advice from an attorney, a party makes an affirmative assertion that it was acting in good faith *because* it relied on counsel's advice to inform its own evaluation and interpretation of the law.  *Id.*

¶6        Rudolfo relies on this court's decision in *Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 154, ¶ 51, 213 P.3d 288, 303 (App. 2009), for the proposition that by choosing to defend itself based on the subjective reasonableness of its actions after consulting with counsel, Everest has necessarily waived the attorney-client privilege.  That argument, however, overreads *Mendoza* and is inconsistent with *Lee*.  Indeed, *Lee* expressly held that the assertion of a subjective good faith defense coupled with consultation with counsel did not, without more, waive the attorney-client privilege:

> We assume client and counsel will confer in every case, trading information for advice.  This does not waive the privilege.  We assume most if not all actions taken will be based on counsel's advice.  This does not waive the privilege.  Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses.  This does not waive the privilege.  All of this occurred in the present case, and none of it, separately or together, created an implied waiver.

*Lee*, 199 Ariz. at 66, ¶ 38, 13 P.3d at 1183.

**¶7** To waive the privilege, something more is required. Under *Lee*, the attorney-client privilege is impliedly waived only when the litigant asserts a claim or defense that is *dependent* upon the advice or consultation of counsel:

> But the present case has one more factor—State Farm claims its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law and its subjective belief based on its claims agents' investigation into and *evaluation of the law*. It turns out that the investigation and evaluation included information and advice received from a number of lawyers. It is the last element, combined with the others, that impliedly waives the privilege. State Farm claims that its actions were prompted by what its employees knew and believed, not by what its lawyers told them. But a litigant cannot with one hand wield the sword—asserting as a defense that, as the law requires, it made a reasonable investigation into the state of the law and in good faith drew conclusions from that investigation—and with the other hand raise the shield—using the privilege to keep the jury from finding out what its employees actually did, learned in, and gained from that investigation.

*Id.* (emphasis added).

**¶8** In *Lee*, State Farm waived the attorney-client privilege because its defense was based on its "investigation and evaluation" of the law, which inevitably depended on and necessarily included the advice it received from its lawyers. *Id.* The coverage issue in *Lee* turned on State Farm's interpretation of recently-decided case law. In such a situation, "the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct." *Id.* at 62, ¶ 28, 13 P.3d at 1179. State Farm's actions were therefore "inextricably intertwined" with the advice it received from counsel. *Id.* at 60, ¶ 23, 13 P.3d at 1177. Accordingly, our supreme court held that State Farm had impliedly waived the attorney-client privilege in that situation.

**¶9** Under *Lee*, to waive the attorney-client privilege, a party must make an affirmative claim that its conduct was based on its understanding of the advice of counsel—it is not sufficient that the party consult with counsel and receive advice. *Id.* at 60, ¶ 23, 13 P.3d at 1177; *see also Twin City*

*Fire Ins. Co. v. Burke*, 204 Ariz. 251, 256, ¶ 21, 63 P.3d 282, 287 (2003) (finding that no waiver of privilege occurred when party had not "affirmatively injected any advice it received from counsel into the bad faith action"). Here, there has been no showing that Everest was in doubt as to any legal issue. Rather, it made decisions during the course of litigation and, of necessity, involved lawyers in that litigation. The decision Everest made to settle the case was not necessarily the product of legal advice, and Everest has not yet asserted—expressly or impliedly—that it was.

¶10       In *Mendoza*, an employer relied on the advice of counsel in scheduling independent medical examinations and determining whether to issue surgical authorization for an employee's worker's compensation claim. 222 Ariz. at 154, ¶¶ 48–49, 213 P.3d at 303. The employer expressly admitted that it had relied substantially on the advice of worker's compensation counsel in reaching its decisions. *Id.* at 154, ¶¶ 48–50, 213 P.3d at 303. In the face of decisions made based on the advice of counsel, such a claim that those decisions were made in subjective good faith necessarily depends upon the information the client had learned from its lawyers. In that circumstance, *Mendoza* found the attorney-client privilege was impliedly waived under *Lee*. *Id.* at 155, ¶ 53, 213 P.3d at 304.

¶11       At present, Everest's defense falls short of the *Lee* and *Mendoza* requirements for an implied waiver. Everest contends that it acted with a subjective belief in the good-faith nature of its actions. Everest also admits that it consulted counsel before making the decision to enter into the settlement agreement and that counsel were involved in the settlement negotiations. But these facts alone are not enough to suggest that Everest's subjective belief in the legality of its actions necessarily included or depended on the advice it received from counsel. *See Lee*, 199 Ariz. at 66, ¶ 38, 13 P.3d at 1183. Everest has not asserted as a defense, at least not yet, that it depended on advice of counsel in forming its subjective beliefs regarding the appropriate course of conduct. Similarly, Everest has not yet seen the need to share the advice of its counsel with its own expert—the expert simply cites the *fact* of consultation as a procedural indication of good faith. As such, Everest has not yet placed the advice it received from counsel at issue in this litigation.[2]

---

[2] We respectfully disagree with our dissenting colleague regarding the significance of Everest's counsel participating in the settlement negotiations. No authority has been presented that participation by a client's attorneys in settlement negotiations automatically waives the

**CONCLUSION**

¶12   For these reasons, we vacate that portion of the trial court's order regarding implied waiver of Everest's attorney-client privilege.

**O R O Z C O**, Judge, dissenting:

¶13   The Majority admirably analyzes the relevant law concerning this special action. I respectfully disagree, however, with their application of that law to these facts. In sum, I believe the facts here establish "the something more" than Everest's mere consultation with counsel, and, as a result, I would decline jurisdiction over this special action.

¶14   Generally, I agree with the Majority's conclusion that simply asserting a subjective good faith defense does not, by itself, waive the attorney-client privilege. I also agree with the Majority's reading of *Mendoza* as narrowly applying *Lee* to *Mendoza*'s particular facts, as opposed to Rudolfo's proffered reading that suggests *Mendoza* establishes automatic waiver of privilege upon asserting subjective good faith.

¶15   The Majority and I part ways on the conclusion that "Everest has not asserted as a defense, at least not yet, that it depended on advice of counsel in forming its subjective beliefs[.]" *Supra* at ¶ 11. Everest has asserted in its initial disclosure statement and in response to interrogatories that it acted in good faith by reaching the settlement at issue. Additionally, the Majority fails to mention that not only did Everest consult counsel regarding the settlement negotiations, counsel also participated in those negotiations on Everest's behalf. In my view, such participation indicates that Everest's counsel did more than provide advice, counsel was directly involved in the relevant events. Counsel's participation, along with Everest's assertion of subjective good faith, is an affirmative interjection of counsel's role in formulating and acting upon Everest's subjective good faith in this litigation. *See Empire West Title Agency, L.L.C. v. Talamante*, 234 Ariz. 497, 499, ¶ 10, 323 P.3d 1148, 1150 (2014) (citing *Lee*, 199 Ariz. at 62, ¶

attorney-client privilege. And such a rule "would provide perverse incentives: parties would leave attorneys out of commercial negotiations for fear that their inclusion would later force wholesale disclosure of confidential information." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24–25 (1st Cir. 2003).

28, 13 P.3d at 1179) (noting that *Lee* requires "the party claiming the privilege must affirmatively interject the issue of advice of counsel into the litigation" (internal quotations omitted)).

**¶16** By ignoring Everest's counsel's involvement with settlement negotiations in their application of *Lee* and *Mendoza*, the Majority essentially enforces, to borrow from Justice Feldman, a "magical admission" standard that requires a party to formally state it actually relied on counsel before the attorney-client privilege can be impliedly waived. *See Lee*, 199 Ariz. at 64, ¶ 32, 13 P.3d at 1181. *Lee* rejected such a framework, however. *See id.* at 64-65, ¶¶ 32-33, 13 P.3d at 1181-82. *Lee* does not require an affirmative interjection in the sense that an implied waiver occurs only when a party explicitly states it relied on counsel. Rather, as applied in *Mendoza* and *Lee* itself, whether an affirmative interjection occurred that waives the privilege depends on the facts. *See id.*, 199 Ariz. at 67, ¶ 40, 13 P.3d at 1184 (concluding that the trial court's "characterization of State Farm's position was reasonably correct under Arizona law"); *Mendoza*, 222 Ariz. at 152, ¶ 41, 213 P.3d at 301 ("Applying *Lee* to the facts of this case . . . ").

**¶17** The Majority correctly reads *Mendoza* as a fact-based application of *Lee*, but it declines to perform a similar analysis here, opting instead to rely on the form of Everest's assertions instead of the substance of the facts before us. We need not apply *Lee* so mechanically. It is true that Everest has not yet explicitly stated that it relied on counsel in acting with subjective good faith, but its actions are proof enough. Counsel's participation in settlement negotiations shows Everest's actions are "inextricably intertwined" with the advice it received from counsel. *See Lee*, 199 Ariz. at 60, ¶ 23, 13 P.3d at 1177. Accordingly, I disagree that Everest is entitled to relief, and I respectfully dissent.

