No. 35) are **DENIED.** Dated this 24th day of June, 2015.

Kenneth INGRAM, et al., Plaintiffs,

v.

GREAT AMERICAN INSURANCE COMPANY, et al., Defendants.

No. CV–13–02265–PHX–SPL.

United States District Court, D. Arizona.

Signed June 30, 2015.

James Alan Hertz, Kenneth R. Friedman, William Seimon Cummings, Freidman Rubin, Bremerton, WA, Robert J. Hommel, Patricia Ronan, Robert J. Hommel PC, Scottsdale, AZ, for Plaintiffs.

John Kristian Wittwer, Steven James Gross, Steven Plitt, Timothy R. Hyland, Kunz Plitt Hyland & Demlong PC, Phoenix, AZ, Travis S. Gamble, Wayne B. Mason, Sedgwick LLP, Dallas, TX, for Defendants.

## ORDER

STEVEN P. LOGAN, District Judge.

Before the Court are the parties' joint motions for discovery dispute resolution (Docs. 95, 148, 149), motion for extension of time (Doc. 174), and stipulation (Doc. 175). The Court will address each in turn as follows.

### I. Background

While transporting Department of Defense cargo for M3 Transport, LLC ("M3"), Plaintiffs Kenneth Ingram and Wylie Harrison's commercial truck malfunctioned. (Doc. 1–1 at 7.) On June 3,

2011, Plaintiffs delivered the truck to an M3 terminal in Glendale, Arizona, and remained at a nearby motel awaiting its repair. (Docs. 1–1 at 7–8; 172–1.) While traveling to the M3 terminal in a rental car on June 6, 2011, Plaintiffs were struck head-on by an oncoming vehicle. (Doc. 1–1 at 8–9.) Both Plaintiffs sustained serious injuries. (Doc. 1–1 at 9.)

Plaintiffs filed workers' compensation claims for wage and medical benefits with Great American Insurance Company ("GAIC"), M3's insurer, on July 15, 2011. (Doc. 102–11 at 3; Doc. 1–1 at 9.) RTW Incorporated ("RTW") was retained as the adjustor to administer the claims. (Doc. 102–11 at 3.) On August 30, 2011, the claims adjustor recommended that they be denied. (Doc. 102–5 at 3–4.) On September 16, 2011, RTW issued a Notice of Claim Status denying Plaintiffs' claims. (Doc. 1–1 at 10, 28.)

Plaintiffs sought review by the Industrial Commission of Arizona ("ICA") on November 8, 2011 (Doc. 172–1 at 162–163), and hearings were held before an Administrative Law Judge ("ALJ") between April and June of 2012. Finding Plaintiffs "status did not become off-duty immediately as of the time the truck was brought in for repairs," on October 30, 2012, the ALJ determined that Plaintiffs' claims were compensable and that they were entitled to benefits. (Doc. 172 at 86–96, 98–108.) M3

requested administrative review on November 28, 2012, and the ALJ summarily affirmed the awards on January 23, 2013. (Doc. 172–1 at 165–179, 181–184.) On February 22, 2013, M3 Transport filed a special action for review of ICA's decision, which was affirmed by the Arizona Court of Appeals on December 26, 2013. (Doc. 172–1 at 186–189, 191–197); *M3 Transport, LLC v. Industrial Commission of Arizona*, 2013 WL 6844147 (Ariz.Ct.App. Dec. 26, 2013).

▮▮▮ Plaintiffs filed their original and amended complaint in the Maricopa County Superior Court against M3,[1] GAIC, and RTW. (Docs. 1–1 at 5–26; 1–2 at 3–17.)[2] On November 6, 2013, Defendants removed this action to federal court. (Doc. 1.) Plaintiffs bring claims for bad faith and punitive damages, alleging there was no legal justification or reasonable basis for Defendants' interpretation and denial of their workers' compensation claims.[3] They allege Defendants knowingly sought unmeritorious review before the ICA and on appeal before the Arizona Court of Appeals.

## II. Discovery Disputes

Under Rule 26 of the Federal Rules of Civil Procedure, a party is entitled to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P.

---

1. M3 was subsequently dismissed by stipulation of the parties. (Doc. 86.)

2. For purposes of this discussion, the Court refers to Defendants interchangeably. In doing so however, the Court notes that it is not a reflection of a factual finding regarding Plaintiffs' joint venture claim.

3. Under Arizona law, "bad faith arises when the insurer intentionally denies, fails to process or pay a claim without a reasonable basis." *Zilisch v. State Farm Mutual Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (2000) (internal citations and quotations omit-

ted). An insurance "carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim." *Id.* at 280. "[W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.*

26(b)(1). Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to information that bears on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). The Court has broad discretion to permit or deny discovery, as well as in determining relevance for discovery purposes. *Little v. City of Seattle,* 863 F.2d 681, 685 (9th Cir.1988); *Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir.2002).

## A. Production of Materials Subject to Attorney–Client Privilege

Plaintiffs ask that Defendants be compelled to produce unredacted portions of claims files and communications between claims adjustors and Defendants' counsel that have been previously redacted or withheld on the basis of attorney-client privilege.[4] Plaintiffs seek relevant communications relating to the decision to deny coverage (July 15, 2011—September 16, 2011), to delay payment of benefits, to appeal the ALJ's decision, and to negotiate settlement (October 29, 2012—November 28, 2012; January 23, 2013—February 20, 2013). Plaintiffs argue that Defendants impliedly waived the attorney-client privilege with respect to these materials, and the redacted or withheld materials are relevant to their bad faith claims.

Under Arizona law,[5] an implied waiver of attorney-client privilege may be found, making otherwise privileged material discoverable, where the "(1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *State Farm Mut. Auto. Inc. Co. v. Lee,* 199 Ariz. 52, 13 P.3d 1169, 1173 (2000) (quoting *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash. 1975)). *See also Mendoza v. McDonald's Corp.,* 222 Ariz. 139, 213 P.3d 288 (Ariz.Ct. App.2009) (discussing "*Hearn* test"). Raising an affirmative defense of good faith in response to a bad faith claim in itself is not sufficient to constitute an implied waiver of the attorney client privilege. *Lee,* 13 P.3d at 1175. Rather, in order to impliedly waive the privilege, the party asserting the privilege must assert some claim or defense invoking the subjective reasonableness of its evaluation and that analysis must have incorporated information the litigant learned from counsel. *Id.* at 1178.

Here, Defendants do not dispute that claims adjustors conferred and received information from counsel in processing and litigating Plaintiffs' claims. (*See e.g.,* Doc. 152–1 at 8.) Prior to the initial denial of Plaintiffs' claims, Kris Wigant, RTW claims adjustor, conferred with counsel Chuck Richards. (*See* Doc. 102–5 at 2.)

---

4. Specifically, Plaintiffs seek the documents identified as redacted for privilege contained in RTW's Harrison Claim File (Doc. 102–1), RTW's Ingram Claim File (Doc. 102–2); GAIC's Claims File (Doc. 102–3), and other communications with GAIC (Doc. 102–4) presumably redacted but not contained in the claims files. (Doc. 102 at 2.)

5. In diversity jurisdiction cases such as this, state law governs the issue of attorney-client privilege. *Roehrs v. Minnesota Life Ins. Co.,* 228 F.R.D. 642, 644–45 (D.Ariz.2005).

Angela Wilson–Travis, GAIC Managed Care Specialist, testified that she received case law from Richards, and subsequently concurred with the decision to deny Plaintiffs' claims, noting that "[u]pon review of the investigation and various ruling's provided by defense counsel agree with denial." (Docs. 102–5 at 2; 109–1 at 12.) Karen Handel, GAIC claims adjustor, testified that counsel "may have provided some information" in deciding whether to pursue an appeal. (Docs. 102–8 at 3; 109–1 at 18.)

■ Rather, Defendants dispute that the attorney-client privilege has been impliedly waived because claims adjustors did not rely on the advice of counsel in making their decisions at any stage. (Docs. 109; 152 at 3.) Defendants' decisions however, were not independent of counsel's advice. Under Defendants' theory of denial, as noted by the ALJ, an evaluation of the law was required in order to evaluate and make the determination on Plaintiffs' claims at all stages of the underlying action. (See Doc. 172–1 at 87, ¶ 3 ("Whether an Applicant is in the course of employment at the time of injury is a legal determination.").) Thus, while Defendants' decisions may have been based on what their agents believed was right, and not based on what their lawyers expressly advised them to do, those decisions necessarily incorporated counsel's "advice" and consultation on the law. See Lee, 13 P.3d at 1174 ("As part of that evaluation, the agents were informed by counsel. On the basis of this evaluation, including, we must suppose, the information gained from counsel, [Defendants'] agents denied the claims in good faith based on their view of the law, not because of what its lawyers advised."). Cf. Everest Indem. Ins. Co. v.

Rea, 236 Ariz. 503, 342 P.3d 417, 420 (Ariz. Ct.App.2015) (finding that because "there ha[d] been no showing that Everest was in doubt as to any legal issue ... [t]he decision Everest made to settle the case was not necessarily the product of legal advice").

In evaluating Plaintiffs' claims, Wigant testified that she considered whether Plaintiffs engaged in "leisure activities that ... deviate from their work duties" (Doc. 172–1 at 149) and whether their actions "benefited the employer" (Doc. 172–1 at 152). Wilson–Travis testified that based on their evaluation of the facts, they concluded that Plaintiffs "were not within the course and scope of their employment" at the time of the collision. (Doc. 109–1 at 12–13.) Handel believed that there was a valid basis to pursue an appeal based on their investigation and findings, which included their "understanding of the overnight traveling employee rule and how it applied to the facts of this case." (Docs. 102–8 at 5–6; 109–1 at 18–19.) Ultimately, Defendants state that Plaintiffs' claims were denied because a threshold condition of compensability had not been met, namely, "the existence of legal causation: whether the accident arose out of and in the course of the worker's employment." (Docs. 102–9 at 2–3; 172–1 at 88, ¶ 4; 174–1 at 6–7.) Defendants maintained that Plaintiffs' conduct fell within the scope of non-compensable deviation. (Docs. 102–9 at 5–6; 174–1 at 9–10.) To the extent that Defendants argue that their "evaluation and denial was based on their independent review of the claim and not their consultation with counsel or their subjective view of the law" (Doc. 109 at 5), that argument is belied by the express basis for denying Plaintiffs' claims (Doc. 102–9 at 2).[6]

6. The Court expresses apprehension as to whether a defense that adjustors reasonably denied Plaintiffs' claims because they did not satisfy a legal standard, but did not analyze or obtain professional advice on the state of the law to make that determination, is in fact a "good faith" defense. The Court highlights

Defendants further reject that they impliedly waived the attorney-client privilege because they have not affirmatively placed the advice of counsel at issue. This argument equally fails. Defendants do not merely deny bad faith and defend on an objective basis as to the reasonableness of their actions. *Cf. Mendoza*, 213 P.3d at 301 ("when an insurer defends a bad faith claim exclusively on the basis its actions were objectively reasonable and merely asks its expert witnesses to evaluate the reasonableness of its conduct under the statutes, the case law, and the policy language, the insurer has not impliedly waived the attorney-client privilege because it has not put any advice it received from counsel at issue") (internal brackets and quotations omitted). Rather, Defendants advance an affirmative factual defense that their conduct was objectively and *subjectively* reasonable and their decisions denying Plaintiffs' claims were made in good faith based "on the investigation, evaluation and recommendation by its third-party administrator as well as its own consideration of the facts and law." (Doc. 18 at 5; *see also* Docs. 7 Aff. Defense ¶¶ 11–12; 109 at 2, fn. 1.) By advancing this defense, Defendants have "affirmatively injected the legal knowledge of its claims managers into the litigation and put the extent, and thus the sources, of this legal knowledge at issue ... [C]laims managers cannot testify that they investigated the state of the law and concluded and believed they were acting within the law but deny Plaintiffs the ability to explore the basis for this belief and to determine whether it 'might have known its actions did not conform to the law.'" *Lee*, 13 P.3d at 1182 (citation omitted). *See also Mendoza*, 213 P.3d at 302 ("in the bad faith

context, when an insurer raises a defense based on factual assertions that, either explicitly or implicitly, incorporates the advice or judgment of its counsel, it cannot deny an opposing party the opportunity to discover the foundation for those assertions in order to contest them."). Therefore, Defendants have put their agents' knowledge of the law and the basis for their understanding of what the law required at issue.

Whether Defendants did not reasonably evaluate the claim, or internally concluded Plaintiffs' claims should be covered but decided to litigate anyway, is relevant to Plaintiffs' bad faith claim. *See Lee*, 13 P.3d at 1175 ("State Farm is liable for bad faith if the evidence shows its employees could not or did not reasonably believe that the first party stacking claims could be rejected within the bounds of the law."); *Everest*, 342 P.3d at 419 ("the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct") (internal quotation and citations omitted). Likewise, to the extent Defendants raise an affirmative defense that Plaintiffs' workers' compensation claims were fairly debatable (Docs. 7 Aff. Defense ¶ 33; 18 at 5), whether they decided to deny Plaintiffs' claims against the advice of counsel is relevant to their bad faith claim. *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992) (in a bad faith insurance claim, the strategy, mental impressions and opinion work product concerning the handling of the claim may be discovered and admitted when they are directly at issue). *See also Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1137 (1982) ("We disagree

that in their depositions, adjustors were unable to clearly explain the applicable law evaluated or provide any specific underlying analysis for denying Plaintiffs' claims; Defendants contend the legal interpretation of Plaintiffs'

claims was fairly debatable (Doc. 18 at 5); and Defendants' own expert maintains that there was no Arizona case law directly on point for the facts presented (Doc. 102–10 at 3).

with the defendants' contention that an insurer's belief that a portion of its insurance contract precludes coverage raises an absolute defense to a claim of bad faith.").

Comparing and applying *Lee, Mendoza,* and *Everest* to the facts of this case, the Court finds that Defendants impliedly waived the attorney-client privilege, thus making the redacted or undisclosed communications discoverable. Plaintiffs are not entitled to discovery of all of counsel's communications, but only to those communications pertaining to the law and information that was part of what Defendants knew in reaching its evaluation of the law. To the extent the documents withheld by Defendants fall outside of this scope, they may continue to withhold portions of its files, but must amend its logs to explain the reasons for withholding communications with *specific detail.*

### B. Production of Employee Materials

Plaintiffs next claim they are entitled to discovery of job performance evaluations of claims personnel and of incentive compensation plans available to claims handling personnel. (Doc. 148.) Defendants argue that this material is undiscoverable because it is not relevant, and disclosure of personnel records in an action to which the employee is not a party is an invasion of their expectation of privacy and confidentiality.

■ The Court finds the potential probative value of the information contained in those records outweigh any privacy concerns. Evidence regarding whether Defendants "set arbitrary goals for the reduction of claims paid" and whether "[t]he salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims" is relevant to whether Defendants acted unreasonably and knew it. *Zilisch,* 995 P.2d at 280 (citing *Hawkins v. Allstate Ins. Co.,*

152 Ariz. 490, 733 P.2d 1073, 1082 (1987)). Likewise, the Court agrees with Judge Sedwick that "an expectation that assessments of work performance and any financial incentives to minimize payments on claims would be kept private is unreasonable." *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.,* 2014 WL 6885828 (D.Ariz.2014). Further, this information was unavailable through deposition testimony of the employees themselves (*see e.g.,* Doc. 172–1 at 147), and Defendants have not shown that this information would be available by other less intrusive means.

Accordingly, Plaintiffs are entitled to adjustor personnel files, limited to performance, including any participation in an incentive plan. If Defendants cannot redact the records in a manner that protects the personal and sensitive information of the individual employee without also redacting the relevant information discussed here, the parties may *jointly* seek a protective order for the specific personnel records prohibiting their dissemination to any third party. Therefore, Defendants shall be required to respond to Nos. 3–6 of Plaintiffs' First Request for Production (Doc. 148–1).

### C. Production of Defendant–Exchanged Materials

Lastly, Plaintiffs claim they are entitled to discovery of an unredacted copy of the contract between the Defendants, and any promotional material or proposal that RTW exchanged with GAIC. (Doc. 149.)

■ The Court finds both the contract and promotional materials are relevant to the determination of whether this action can proceed against RTW. Generally, because the duty of an insurer to act in good faith is non-delegable, an insured cannot bring a negligence claim against an independent insurance adjuster that owes

the insured no duty of care. *See Walter v. Simmons,* 169 Ariz. 229, 818 P.2d 214, 223 (Ariz.Ct.App.1991). However, Arizona courts have taken exception to this principle and found that where an "insurer and its agent are engaged in a joint venture ... each is jointly and severally liable with the other for a bad faith refusal to pay," notwithstanding an absence of "proof of profit and loss sharing and ... joint right to control." *Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 699 P.2d 376, 386 (Ariz.Ct.App.1984) (finding an adjuster jointly liable for bad faith where it had marketed the insurer's policy, "collected premiums[,] and handled claims according to guidelines provided by [the insurer]"). *See also Sparks,* 647 P.2d 1127 (finding liability to a third party that handled premiums, investigation and payment of claims, and distributed brochures to induce the purchase of policies); *cf. West v. Soto,* 85 Ariz. 255, 336 P.2d 153 (1959) (under Arizona law, a joint venture requires an agreement, a common purpose, a community of interest, and an equal right of control).

Thus, the fact that Plaintiffs and RTW lacked privity of contract is not dispositive. Whether RTW advertised more aggressive claims handling to promote business with GAIC, or GAIC promised financial benefits to RTW in return for lowering costs by paying out fewer claims is relevant to whether RTW and GAIC are joint venturers and denied Plaintiffs' claims in good faith. The unredacted terms of agreement in the contract between RTW and GAIC and the promotional materials are relevant to this determination, and the Court finds

that Plaintiffs' request is sufficiently tailored to the relevant materials. Plaintiffs do not seek general advertising information; they request a copy of advertising materials provided by RTW *to* GAIC "prior to entering into the contract under which RTW, Inc. provided claim adjusting services for the Plaintiffs' claims." (Doc. 149–1 at 2.) Therefore, Defendants shall be required to respond to Nos. 1 and 2 of Plaintiffs' Second Request for Production (Doc. 149–1).[7]

### III. Deadlines

Lastly, Plaintiffs Kenneth Ingram and Wylie Harrison move for an extension of time to file a response to RTW's Motion for Summary Judgment (Doc. 174), to which Defendants do not oppose (in part) and have joined in a Stipulation (Doc. 175). Having determined that Plaintiffs are entitled to additional discovery that is directly relevant to the underlying issues presented RTW's motion, rather than extending the deadline to respond, the Court will deny Defendant's motion and give it an opportunity to refile following completion of discovery. Both parties should be afforded an opportunity to address whether the materials produced impact whether RTW should remain a Defendant in this action. Accordingly,

### IT IS ORDERED:

1. That the Joint Motions for Discovery Dispute Resolution (Docs. 95, 148, 149) are **granted** as set forth above;

---

7. Defendants assert that "GAIC and RTW have already produced the relevant Services Agreement, which shows the specific financial terms between them and the manner in which RTW would be compensated for its work in adjusting claims ... Defendants RTW and GAIC have also previously disclosed the nature of their contractual relationship and directions to RTW regarding specific claims handling issues, including the claims handling guidelines applicable to RTW's services during the relevant time." (Doc. 150 at 2.) Defendants shall be required to supplement their response with an unredacted copy of their agreement(s).

2. That the stay of the case deadlines is **lifted** and the deadlines are **modified** as follows:

Discovery Deadline: **08/17/2015**

Expert Discovery Deadline: **09/17/2015**

Dispositive Motion Deadline: **10/05/2015**

3. That RTW's Motion for Summary Judgment (Doc. 171) is **denied** without prejudice with leave to refile upon completion of discovery; and

4. That the Motion for Extension of Time (Doc. 174) and the parties' Stipulation (Doc. 175) are **denied as moot.**