SWANN, Judge:
¶ 1 The plaintiffs in this legal malpractice action allege that transaction counsel's negligence caused them to incur the cost of defending an action brought against the plaintiffs based on the transaction. The superior court concluded that the plaintiffs' claims created waiver of the protections of the attorney-client privilege and the work-product doctrine with respect to their communications with their litigation defense counsel. Applying the test for implied waiver set forth in Hearn v. Rhay , 68 F.R.D. 574 (E.D. Wash. 1975), and adopted by our supreme court in State Farm Mutual Insurance Co. v. Lee , 199 Ariz. 52, 13 P.3d 1169 (2000), we hold that the court erred. The plaintiffs cannot be said to have knowingly and voluntarily waived privilege-the purported waiver resulted not from plaintiffs' own act, but from the defendants' independent decision to defend on a contributory negligence theory. The protected communications have no inherent relevance to the malpractice claims. Further, preservation of the privilege does not deny the defendants access to information vital to their defense. We therefore accept jurisdiction and grant relief.
FACTS AND PROCEDURAL HISTORY
¶ 2 Robert W. Baird & Co. and Hilltop Securities Inc. (collectively, "Underwriters") were principal underwriters of a municipal bond offering that financed the construction of an event center in the Town of Prescott Valley. Stinson Leonard Street L.L.P. ("Stinson") served as Underwriters' counsel in connection with the offering, and Kutak Rock L.L.P. and its partner Patrick Ray (collectively, "Kutak") served as bond counsel. Kutak and Stinson are hereinafter referred to collectively as "Bond Counsel."
¶ 3 The bonds were sold in late 2005 pursuant to official statements and related bond documents, which Bond Counsel helped prepare. In 2009, the bondholders brought an action ("the Bond Litigation") against Underwriters, Bond Counsel, and others. The bondholders alleged that the official statements misrepresented debt-service funding projections and debt-service security, and that the bond documents were defective with respect to the security interest. Underwriters retained counsel ("Bond Litigation Counsel") to defend them in the Bond Litigation. Underwriters expended millions of dollars in defense *898 costs in the Bond Litigation before eventually settling.
¶ 4 In 2014, Underwriters brought a malpractice action ("the Malpractice Litigation") against Bond Counsel. Underwriters assert professional negligence claims arising from Bond Counsel's preparation of the official statements and bond documents, and they assert a negligent misrepresentation claim arising from an opinion letter that Kutak provided in connection with the bond offering. On the professional negligence claims, Underwriters seek as damages their cost of defending the Bond Litigation. Bond Counsel assert, as an affirmative defense, that Underwriters' defense costs were not reasonable. Bond Counsel also asserts that Underwriters' damages were caused wholly or partially by Underwriters or others, and Bond Counsel have filed notices of non-parties at fault.
¶ 5 Underwriters produced Bond Litigation Counsel's billing records to Bond Counsel. Underwriters moved for a protective order, however, with respect to Bond Counsel's discovery requests for information protected by the attorney-client privilege and the work-product doctrine. The superior court denied Underwriters' motion, reasoning:
[Underwriters'] affirmative assertion that malpractice by [Bond Counsel] caused them to incur all of their attorney's fees in the bond litigation is an affirmative claim which squarely puts in dispute what their attorneys in the [B]ond [L]itigation were doing and why they were doing it. What those attorneys were doing and why they were doing it is vital information to [Bond Counsel] in mounting a defense to such a claim.
Applying the privilege to requests for this information would be allowing [Underwriters] to use [Bond Litigation Counsel]'s work as both a sword (as a basis for their damages) and a shield (in prohibiting [Bond Counsel] from inquiry about what [Bond Litigation Counsel] w[as] doing and why....
¶ 6 The court then stayed the matter to permit this special action by Underwriters.
DISCUSSION
¶ 7 We accept special-action jurisdiction because Underwriters have no equally plain, speedy, and adequate remedy by appeal. Twin City Fire Ins. Co. v. Burke , 204 Ariz. 251, 252, ¶ 3, 63 P.3d 282, 283 (2003). We review the superior court's ruling de novo. Id. at 254, ¶ 10, 63 P.3d at 285.
¶ 8 With some exceptions that do not apply here, "[i]n a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." A.R.S. § 12-2234(A) ; see also Ariz. R. Sup. Ct. 42, ER 1.6(a). The privilege exists "to encourage free exchange of information between the attorney and the client and to promote the administration of justice." State v. Holsinger , 124 Ariz. 18, 22, 601 P.2d 1054, 1058 (1979). "As a matter of common law and legislative policy, the privilege serves as a narrow impediment to the search for the truth...." Accomazzo v. Kemp , 234 Ariz. 169, 172, ¶ 9, 319 P.3d 231, 234 (App. 2014).
¶ 9 The question here is whether Underwriters impliedly waived the privilege with respect to their communications with Bond Litigation Counsel and Bond Litigation Counsel's advice. " 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right." Green v. United States , 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). To determine whether a litigant has impliedly waived the attorney-client privilege when the litigant's mental state is at issue, we apply the three-part Hearn test. Empire W. Title Agency, L.L.C. v. Talamante , 234 Ariz. 497, 499, ¶ 9, 323 P.3d 1148, 1150 (2014). Under the Hearn test, waiver exists when:
(1) [The] assertion of the privilege was the result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party;
(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and *899 (3) application of the privilege would have denied the opposing party access to information vital to his defense.
Empire W. Title Agency , 234 Ariz. at 499, ¶ 9, 323 P.3d at 1150 (quoting Lee , 199 Ariz. at 56, ¶ 10, 13 P.3d at 1173 ). Each element of the Hearn test must be satisfied before waiver may be found. On the record before us, none of the elements are met.
I. UNDERWRITERS' ASSERTION OF THE PRIVILEGE WAS NOT THE RESULT OF THEIR FILING OF THE MALPRACTICE LITIGATION.
¶ 10 First, we reject Bond Counsel's contention that Underwriters' malpractice complaint caused their assertion of privilege.
¶ 11 By commencing the Malpractice Litigation against Bond Counsel (and only Bond Counsel), Underwriters put at issue whether Bond Counsel caused Underwriters to incur the cost of defending the Bond Litigation. See Glaze v. Larsen , 207 Ariz. 26, 29, ¶ 12, 83 P.3d 26, 29 (2004) (holding that elements of malpractice include proximate causation, actual causation, and damages). But the complaint did not place at issue the question that resulted in Underwriters' assertion of privilege: whether persons other than Bond Counsel were responsible for some or all of those claimed damages. See Robertson v. Sixpence Inns of Am., Inc. , 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990) ( "The [negligent] defendant's act or omission need not be a 'large' or 'abundant' cause of the injury; even if defendant's conduct contributes 'only a little' to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct." (citation omitted)). Contributory negligence is an affirmative defense that the defendant may plead and must prove. Ariz. R. Civ. P. 8(c)(1)(D) ; Hall v. A.N.R. Freight Sys., Inc. , 149 Ariz. 130, 140, 717 P.2d 434, 444 (1986), superseded by statute on other grounds as recognized by State Comp. Fund of Ariz. v. Fink , 224 Ariz. 611, 614, ¶ 14, 233 P.3d 1190, 1193 (App. 2010) ; see also Piner v. Superior Court (Jones) , 192 Ariz. 182, 189, ¶¶ 28, 30, 962 P.2d 909, 916 (1998) (adopting Restatement rule that "the plaintiff has the burden of proving that the conduct of each defendant was a cause of the injury, but when a defendant 'seeks to limit his liability on the ground that the harm is capable of apportionment ... the burden of proof as to the apportionment is upon each such actor.' " (citation omitted)). Bond Counsel, not Underwriters, placed fault- and damage-apportionment at issue by asserting contributory negligence as an affirmative defense and filing notices of non-parties at fault.
¶ 12 Bond Counsel nonetheless contend that Underwriters were responsible for placing apportionment at issue because the complaint was the "catalyst" for Bond Counsel's defenses. This argument would, of course, mean that every plaintiff is responsible for every defendant's actions in every case, because claims are always the catalysts for defenses. In support of such a rule, Bond Counsel cites Elia v. Pifer , 194 Ariz. 74, 977 P.2d 796 (App. 1998), a case that predates our supreme court's adoption of the Hearn test. Elia did not, however, as Bond Counsel contends, hold that "the act of filing suit puts contributory negligence at issue." The malpractice defendant in Elia asserted contributory negligence as a defense. Id. at 78, ¶ 12, 977 P.2d at 800. But the court found waiver of the attorney-client privilege based on the plaintiff' s specific theory of the case. Id. at 81, ¶ 35, 977 P.2d at 803 ("Elia's theory of the case was that he had not agreed to settle his dissolution matter and that he had not been advised of appeal rights. He was not, therefore, entitled to preclude evidence relevant to these matters by asserting the attorney-client privilege.").
¶ 13 Bond Counsel also cites several cases from other jurisdictions. Those cases are distinguishable. None of them involved a fact pattern in which a malpractice defendant represented the plaintiff in an initial transaction, and later sought to discover, based on its defenses, privileged information related to the plaintiff's representation by separate counsel in litigation arising from the transaction. By contrast, Parler & Wobber v. Miles & Stockbridge, P.C. , 359 Md. 671, 756 A.2d 526, 542 (2000), and Lyon Financial Services, Inc. v. Vogler Law Firm, P.C. , 2011 WL 3880948, at *3 (S.D. Ill. 2011) (unpublished), recognized "catalyst" waiver when *900 the malpractice defendant sought to shift blame to others who had represented the plaintiff in the same underlying litigation. And Simmons Foods, Inc. v. Willis , 191 F.R.D. 625, 636-37 (D. Kan. 2000), recognized such waiver when the malpractice defendant sought to shift blame to others who had been involved in the same underlying bankruptcy action. Here, the alleged malpractice preceded the separate litigation in which the damages were incurred-the damages stemming from the Bond Litigation are simply the cost (not the content) of Underwriters' defense in that action.
¶ 14 More persuasive is the extra-jurisdictional authority cited by Underwriters. For example, Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc. , 189 Ill.2d 579, 244 Ill.Dec. 941, 727 N.E.2d 240 (2000), involved an analogous fact pattern: the defendant drafted consignment contracts for the plaintiff, the plaintiff retained litigation counsel to defend against claims based on the contracts, the plaintiff sued the defendant for malpractice, and the defendant raised affirmative defenses. Id. 244 Ill.Dec. 941, 727 N.E.2d at 241-42. The defendant sought to discover the plaintiff's privileged communications with the litigation counsel based on the theory that it would otherwise "be impossible to determine whether and to what extent [the plaintiff]'s alleged loss resulted from [the defendant]'s alleged malpractice." Id. at 243, 727 N.E.2d at 241-42. The Illinois Supreme Court reasoned that "[t]o allow [the defendant] to invade the attorney-client privilege with respect to [the plaintiff's litigation counsel] simply by filing the affirmative defenses it did would render the privilege illusory with respect to the communications between [the plaintiff] and [its litigation counsel]." Id. at 244, 727 N.E.2d at 241-42. The court further explained: "That [the plaintiff]'s damages are subject to dispute by the parties does not mean that [the plaintiff] has waived its attorney-client privilege regarding communications between it and [its litigation counsel] that might touch on that question. If raising the issue of damages in a legal malpractice action automatically resulted in the waiver of the attorney-client privilege with respect to subsequently retained counsel, then the privilege would be unjustifiably curtailed." Id. at 244-45, 727 N.E.2d at 241-42.
¶ 15 Underwriters' assertion of the attorney-client privilege was the result of Bond Counsel's defense strategy. Bond Counsel's choice of defense cannot be attributed to Underwriters for purposes of the first prong of the Hearn test.
II. UNDERWRITERS DID NOT PUT PROTECTED INFORMATION AT ISSUE.
¶ 16 We further hold that Underwriters' complaint did not put protected information at issue for purposes of the second prong of the Hearn test. Nor, in fact, did Bond Counsel's defense.
¶ 17 Waiver is not effected by the mere filing of an action. Empire W. Title Agency , 234 Ariz. at 499, ¶ 10, 323 P.3d at 1150. Nor is it effected by the mere fact that the privileged information would be relevant or of pragmatic importance to the issues before the court-otherwise, the privilege would have little meaning. Twin City , 204 Ariz. at 256, ¶ 22, 63 P.3d at 287 ; Accomazzo , 234 Ariz. at 172, ¶ 9, 319 P.3d at 234. Waiver occurs only when the party seeks to use protected information as both sword and shield. Throop v. F.E. Young & Co. , 94 Ariz. 146, 158, 382 P.2d 560, 572 (1963). Waiver requires that "the party claiming the privilege [ ] affirmatively 'interject[ ] the issue of advice of counsel into the litigation.' " Empire W. Title Agency , 234 Ariz. at 499, ¶ 10, 323 P.3d at 1150 (quoting Lee , 199 Ariz. at 62, ¶ 28, 13 P.3d at 1179 ). The touchstone for implied waiver is whether the protected information is inherently relevant to the privilege-holder's theory of the case. See Burch & Cracchiolo, P.A. v. Myers , 237 Ariz. 369, 375, ¶ 20, 351 P.3d 376, 382 (App. 2015) ("Implied waiver can occur where a party advances a claim or affirmative defense premised upon otherwise privileged information, such as the reasonableness of its evaluation of the law, which directly relates to the heart of the litigation."); Everest Indem. Ins. Co. v. Rea , 236 Ariz. 503, 505, ¶ 7, 342 P.3d 417, 419 (App. 2015) ("[T]he attorney-client privilege is impliedly waived only when the litigant *901 asserts a claim or defense that is dependent upon the advice or consultation of counsel.").
¶ 18 Underwriters' basic claim is simple: Bond Counsel committed malpractice that later required Underwriters to spend money to defend themselves. The substance of Underwriters' communications with defense counsel are not necessary to decide whether Bond Counsel committed malpractice before the bondholders ever sued Underwriters. Further, even if Bond Counsel is correct that tortious conduct by parties other than Bond Counsel led to the Bond Litigation, Underwriters' privileged communications with Bond Litigation Counsel are not inherently relevant to that defense theory. That is not to say that Underwriters' decision to assert the privilege is without risk to Underwriters. Indeed, the decision may well impair Underwriters' claims-to the extent that the disclosed billing records are insufficient to permit an informed assessment of how much of Bond Litigation Counsel's work related to Bond Counsel's alleged negligence, Underwriters ultimately may be unable to recover all or a portion of their damages. Underwriters' privilege, however, remains intact.
¶ 19 Bond Counsel contend that Underwriters put Bond Litigation Counsel's advice at issue "by claiming that they could not have settled any of the claims asserted [in the Bond Litigation] until after they incurred [the] fees." But Underwriters' bare claim for litigation expenses cannot be equated with assertion of a settlement-timing theory dependent on the advice of counsel. Again, the assertion of the privilege to bar discovery of relevant evidence on that theory could profoundly diminish any potential recovery. But that is not the same as waiver.
¶ 20 Even if Underwriters' claim for damages had raised the settlement issue, that alone would not provide grounds for waiver. "[T]o waive the attorney-client privilege, a party must make an affirmative claim that its conduct was based on its understanding of the advice of counsel-it is not sufficient that the party consult with counsel and receive advice." Everest Indem. , 236 Ariz. at 505, ¶ 9, 342 P.3d at 419 (finding no waiver related to a settlement decision).
III. UNDERWRITERS' ASSERTION OF PRIVILEGE DOES NOT DENY BOND COUNSEL ACCESS TO VITAL DEFENSE INFORMATION.
¶ 21 We finally hold that preservation of Underwriters' privilege does not deprive Bond Counsel access to information vital to their defense, as required by the third prong of the Hearn test.
¶ 22 Bond Counsel overreach when they claim entitlement to Bond Litigation Counsel's "status reports, litigation budgets, and analyses of liability exposure and the likelihood of settlement," and information regarding "how the underwriters themselves viewed the claims" and "why [Bond Litigation Counsel] were doing [what they did]." The fact that such information might reveal information useful to Bond Counsel (such as Underwriters' and Bond Litigation Counsel's assessment of Bond Counsel's relative culpability) is insufficient to cause waiver. Privileged communications almost always present the spectre of usefulness and relevance, but their allure does not defeat the privilege. The privileged information's potential utility to Bond Counsel does not provide grounds for waiver; it instead illustrates the importance of preserving the privilege when the malpractice plaintiff seeks to use it as a shield only.
CONCLUSION
¶ 23 Underwriters did not waive the attorney-client privilege with respect to their communications with Bond Litigation Counsel. They did not assert the privilege in response to their own act, they did not put protected information at issue, and application of the privilege does not deny Bond Counsel access to information vital to their defense. The superior court erred by denying Underwriters' motion for a protective order. We accept jurisdiction and grant relief.